Oosterwyk, Plaintiff in error, vs. The State, Defendant in error.

*December 11, 1942—March 9, 1943.*

*Max E. Geline* of Milwaukee, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, Herbert J. Steffes,* district attorney of Milwaukee county, and *Charles J. Kersten,* assistant district attorney, and oral argument by *William A. Platz,* assistant attorney general.

WICKHEM, J.   Plaintiff in error claims that the record does not sustain conviction, and in the alternative, that justice has probably miscarried, and that this court should exercise its discretionary powers of reversal under sec. 251.09, Stats. Since both contentions involve an examination of the evidence offered to sustain the conviction, we shall briefly review that evidence.

Oosterwyk, a man with no previous criminal record, was the proprietor of a small jewelry store on Vliet street in Milwaukee.   He is an immigrant, a worker in gold and silver, and was one of the victims of the depression.   He had been on WPA, doing ornamental metal work for some time, and had gradually saved up enough money to start a small jewelry

store.   About a year before the transaction in question, plaintiff in error became acquainted with one Marvin Grajek, through a man named Kadis.   At that time, Oosterwyk had purchased some jewelry from Kadis and a secondhand suit from Grajek.   On July 14, 1940, Grajek and one Hahn had stolen some articles, including jewelry and silver from the Tuttle home in Milwaukee.   Grajek testified that on July 16th, between 1 : 30 and 2 o'clock in the afternoon, he entered plaintiff in error's jewelry store with a stolen ring, told plaintiff in error that it was "hot" and offered it for sale for $30. Plaintiff in error offered him $25 for the ring and he ultimately bought it at that figure.   The next day plaintiff in error sold the diamond ring to another jeweler for $45.   The sister of one of the thieves, Mrs. Kadis, testified that she came to the jewelry store on the night after the diamond ring was bought, and sold some gold to plaintiff in error for $15.50. This consisted of some sorority pins and other articles of jewelry that were pretty well smashed up.   This was sold at its market value as gold.   On this occasion, Grajek and Mrs. Kadis brought a bag of silver stolen from the Tuttle home for the purpose of selling it to plaintiff in error.   Grajek says he placed it on the showcase and told plaintiff in error, "You better take that down; it's 'hot.' "   Mrs. Kadis states that Grajek warned plaintiff in error not to leave the silver on the counter because the police might come in.   Plaintiff in error denies that he was told that the ring was. "hot," and as far as the silver is concerned, stated that Grajek said, "Take it away; I don't want anybody to see me selling it."   Plaintiff in error bought the gold, put the bag of silver under the counter, and the next morning returned the latter because it was more than he could use.   The two police officers testified that Oosterwyk admitted to them that he knew the jewelry was stolen.   This was denied by plaintiff in error.   There is evidence that Grajek claimed to have been shortchanged $5 by plaintiff in error when he paid for the diamond ring.   There is some difference

in the testimony as to when the silver was brought in, but that is probably not important.

There is evidence to sustain this conviction and plaintiff in error's contention in this respect must fail. He relies upon *State v. Fricke,* 215 Wis. 661, 255 N. W. 724, in which this court said that defendant has a right on appeal or writ of error to demand the deliberate opinion and judgment of this court upon the question whether guilt was sufficiently proven. Statements like this have caused some confusion and have led to contentions that defendants in criminal cases are entitled to some sort of second jury trial in this court. But the court has several times explained what was meant by this. If there is a conflict in the evidence and if the evidence for conviction will support a conviction beyond a reasonable doubt, conviction must be sustained. *Parke v. State,* 204 Wis. 443, 235 N. W. 775. The most that this court can do is to consider whether the evidence for the state, giving it the most favorable view, is sufficient to establish conviction beyond a reasonable doubt.

This is not a case involving the strength of inferences or the convincing qualities of circumstantial evidence. The plaintiff in error admittedly bought stolen articles. The vendor of the articles testifies that he told plaintiff in error that they were stolen. The police officers state that plaintiff in error admitted knowledge that they were stolen. If this testimony is true, there is no reasonable doubt of plaintiff in error's guilt. Plaintiff in error's attacks are upon the weight of the testimony and this bears only upon the question of discretionary reversal.

The state's testimony is attacked as inherently improbable. The improbabilities may be concisely stated as follows:

(1) That plaintiff in error did not pay for the diamond ring on the spot, but signed a receipt and gave an antique gold piece, plus one dollar as an earnest for the payment of the ring the next day;

(2) That the transaction was over the counter and in the public portion of plaintiff in error's store;

(3) That there is no evidence that Grajek who had met plaintiff in error only once had any reason to suppose that plaintiff in error was willing to act as a fence, and that it is inconceivable that he should have told plaintiff in error that the property was stolen, thus risking at most a report to the police, and at the least, a low price for the goods offered;

(4) That the plaintiff in error refused to take the silverware indicates that he was not a fence, but simply bought old metal in accordance with his needs as a fabricator of jewelry;

(5) That the proceeds of no other robbery were found in plaintiff in error's store;

(6) That there is no evidence that he had ever acted as a fence or engaged in other criminal activities;

(7) That he paid the market price for the old gold sold to him;

(8) That he fully co-operated with the police after his arrest, and in helping them identify all items purchased from Grajek or his associates;

(9) That aside from the police, all of the state witnesses were of bad character, in custody under serious charges, had the motive of bargaining for leniency, and in the case of Grajek, a grievance arising out of a claim that plaintiff in error shortchanged him on the purchase price of the ring.

The foregoing standing alone constitutes a formidable assault upon the weight of the prosecution's testimony, gives us a considerable degree of concern and makes a powerful appeal for a discretionary reversal. We have heretofore deliberately reserved consideration of plaintiff in error's admissions to police officers that he bought the property with knowledge that it had been stolen. Some attack is made upon this testimony upon the grounds that the police had arrested plaintiff in error before there was any evidence of guilty knowledge on his part, and that they were anxious to make the charges

against plaintiff in error stand for the purpose of exculpating themselves.

This contention is without substance. However, admissions must be received with considerable caution. The danger of changing the meaning by a slight inaccuracy in reporting the words is always present, and is increased when the person making the admissions is a foreigner whose English may not be precise.

In the light of this, we turn to an examination of the testimony of the officers. The admissions came during the course of an inventory taken of plaintiff in error's store and while he was in custody. The officer was asked on cross-examination:

"Did Mr. Oosterwyk tell you that he didn't like the silverware and that's why he returned it?"

The answer was:

"No, he said he couldn't use that amount of silver and that's why he didn't want to buy any of it, and he knew it was stolen, anyway. He told me he knew it was stolen."

Another officer was present in plaintiff in error's store on the same occasion. He stated that in reference to some articles pointed out by plaintiff in error as having been purchased from Grajek and Kadis he asked Oosterwyk: " 'Well, the time you got this stuff didn't you know there was something wrong with it?' He shrugged his shoulders, and he says: 'Well,' he says, 'I probably did.' "

The admission to the first officer is not literally reported and, in any event, refers to the silverware which plaintiff in error did not purchase and is not broad enough to constitute an indirect admission of knowledge that the property he actually bought was stolen. The admission to the other officer refers to articles purchased as old gold from Grajek and Kadis and his answer to the question whether he did not know that there was something wrong with this stuff purports to be a

quotation. Here, however, both the question and the answer are equivocal and have no relation, either to the silverware or diamond ring. The evidence is scant as to the circumstances of the making of the admission and there was no attempt to examine the officer as to the precise language of the admission. For the foregoing reasons these cannot be considered to be more than relatively weak admissions, and such admissions are not commonly considered to constitute strong evidence. As against all of the circumstances heretofore related, the strongest evidence against plaintiff in error is his own testimony concerning the silverware. As heretofore stated, plaintiff in error denied being told that the bag should be taken from the counter because it was "hot" or because the police might see it but did admit that Grajek said "Take it away; I don't want anybody to see me selling it." While it is difficult to believe from this evidence and from the admissions—weak as they are—that plaintiff in error was wholly without suspicion or reason to suspect that the silverware and perhaps the other articles had been stolen, a considerable degree of concern arises out of the substantive law applicable to the offense of receiving stolen property. In *Meath v. State,* 174 Wis. 80, 82, 83, 182 N. W. 334, a prosecution for receiving stolen property, the trial court's instruction was to the effect that to satisfy the element of guilty knowledge it was not necessary for the state to prove that the defendant actually knew that the car had been stolen "but it is sufficient, so far as this element is concerned, if the state has convinced you and each of you from the evidence beyond a reasonable doubt that the defendant, with intent to defraud the owner, received, concealed, or aided in the concealment of said automobile under such facts and circumstances that he ought to have known that it was stolen." The conviction was reversed for misdirection. This court said:

"By the express language of this statute an essential element of the offense is that the defendant shall, at the time of

his receiving or dealing with the stolen property, know that such property has been stolen. It is as essential that the jury shall, beyond a reasonable doubt, find that he had such knowledge at the time of his transaction with the property as they must that the property was theretofore stolen. Such guilty knowledge, or its equivalent, guilty belief, may be proven by circumstantial evidence, but it is not sufficient that such circumstantial evidence convinces the jury beyond a reasonable doubt that the defendant ought to have known that the property was stolen; it must go a substantial step further and satisfy them that he did know or believe."

What we consider at least from the standpoint of credibility the strongest evidence in the case against the plaintiff in error deals with silverware which plaintiff in error never actually bought. If he knew, or should have known, that the silver was stolen, would this charge him with knowledge that the diamond ring and the other jewelry was also stolen or would it simply create a situation where he ought, from the facts, to have known that it was stolen? With respect to the jewelry bought for old gold was his admission merely of suspicion and did it include the ring previously bought? These matters give us misgivings whether the trial of the case was so conducted as to present sharply to the attention of the trial judge the distinction held to be essential in the *Meath Case, supra*. For this reason, although we hold that there is enough evidence to support a finding of guilt, we consider that we should exercise our discretionary powers to reverse the conviction and to remand the cause for a new trial.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.