Argued at Pendleton May 3; reversed June 15, 1943

## STATE v. ASCHENBRENNER ET AL.

(138 P. (2d) 911)

Before BAILEY, Chief Justice, and BELT, LUSK and
HAY, Associate Justices.

*George H. Miller,* of Enterprise, and *S. H. Burleigh,* of La Grande, for appellants.

*R. V. Chrisman,* District Attorney, of Enterprise (C. C. Proebstel, of Pendleton, on the brief) for respondent.

BAILEY, C. J.  The grand jury of Wallowa county on December 9, 1941, returned an indictment against the defendants, Reuben Aschenbrenner, Chester Aschenbrenner and Jack Houp, accusing them of the crime of "larceny by taking up estrays and not complying with estray laws, committed as follows:

"The said Reuben Aschenbrenner, Chester Aschenbrenner and Jack Houp on the 23rd day of October, A. D. 1941, in the said county of Wallowa and state of Oregon, then and there being, and then and there acting jointly and together, and having theretofore and more than 5 days prior thereto taken up as estrays, the following described animals, to-wit: 5 ewe sheep, then and there being the personal property of Falconer and Son, a corporation, organized and existing under and by virtue of the laws of the state of Oregon, then and there being of the value of the sum of $75.00, lawful money of the United States of America, did then and there at the same time and place while acting jointly and together as aforesaid, did each and all unlawfully, wilfully and feloniously fail to state under oath before the nearest justice of the peace, where and when said stray animals, or any of them, were taken up, in the manner provided by section 32-1402, Oregon Compiled Laws Annotated, or at all, and without complying with the estray laws of the state of

Oregon, being article I, chapter 14, Oregon Compiled Laws Annotated, contrary to the statutes in such cases made and provided, and against the peace and dignity of the state of Oregon.''

Upon the trial the defendants were found guilty of the crime charged against them. Reuben Aschenbrenner was sentenced to imprisonment in the state penitentiary for a maximum period of four months, and sentence was ''suspended as to the defendants Chester Aschenbrenner and Jack Houp for a period of time of two years,'' on certain terms and conditions. All three defendants have appealed.

The bill of exceptions contains the instructions of the court, the defendants' exceptions, the instructions requested by the defendants and not given by the court, and a part of the testimony on cross-examination of Ray Harris, a witness called by the state. There is no transcript of the testimony, and the only evidence before us is that above mentioned, part of the testimony of Ray Harris.

■ The assignments of error are based on the defendants' exceptions to the instructions given, the refusal of the court to give one of the instructions requested by the defendants, and the denial of the defendants' motion for a new trial. No attempt is made by the appellants in their brief to comply with paragraph 3, rule 13 of this court (9 O. C. L. A., page 329), which requires that the instructions claimed to be erroneous and the objections thereto be set forth in the assignments of error in *haec verba,* and that when error is based on the refusal of the trial court to give a requested instruction, such requested instruction likewise be set forth verbatim. Compliance with this simple requirement would be of material assistance to the court, and the rule should be observed.

The defendants are charged with violation of § 32-1402, O. C. L. A., which provides in part that: "All persons taking up an estray animal shall, within five days, state under oath before the nearest justice of the peace where and when said stray animal was taken up".

The penalty fixed for failure to comply with the section quoted and other provisions of the act relating to taking up estrays (§§ 32-1401 to and including 32-1407, O. C. L. A.) is set forth in § 32-1407, O. C. L. A., thus: "Any person who shall take up any estray otherwise than according to the provisions of this act, . . . shall be deemed guilty of larceny and shall be subject to such penalty as the law provides for such crime."

An estray is defined by § 32-1401, O. C. L. A., as "any animal of any unknown owner unlawfully running at large or lawfully running at large and trespassing within a legal enclosure". After instructing the jury as to the meaning of "estray" the trial court further charged it:

". . . that the fact that stray animals trespass and wander onto land belonging to another does not constitute the taking up of such animals and before the owner of the land could be said to have taken up such animal or animals, he would have to know of the presence of such strays on his property and to knowingly exercise acts of possession or confinement of such animals.

". . . that the term 'taking up an estray' means taking possession of and holding an animal . . . the taking up of an estray must be a conscious act, done knowingly, and even though you should find from the evidence beyond a reasonable doubt that the defendants or some one or more of them, had in their possession stray sheep belonging to Falconer & Son, that this would not constitute taking up of such sheep unless the defendants knew

that they had possession of sheep which did not belong to them."

■■ The foregoing instruction is a correct statement of the law relating to the taking up of estrays. Before a defendant can be found guilty of a violation of the law he must knowingly have exercised acts of possession of confinement of an estray. He must have known that the estray did not belong to him. The word "knowingly" is not used in the statute, it is true, but we believe that it is implied: *State v. Cox,* 91 Or. 518, 179 P. 575; 8 R. C. L., Criminal Law, § 12, page 62; 22 C. J. S., Criminal Law, § 30, page 85. The trial court so construed the law and no contention is here made that its interpretation is incorrect. ·

One of the principal grounds assigned by the defendants for reversal of the judgment is the giving of the following instruction:

"You are instructed that in order to convict the defendants of the crime charged, it is necessary for the state to prove beyond a reasonable doubt that the defendants had knowledge, or notice of such facts and circumstances as would have convinced a reasonable man of ordinary intelligence and observation, that estray sheep were in the Aschenbrenner flock, and if upon the whole evidence in this case you have a reasonable doubt that the facts and circumstances known to the defendants (if you find any were known to them), were such that a reasonable man of ordinary intelligence and observation would have known that estray sheep were in the Aschenbrenner flock, then you should find the defendants not guilty of the crime charged.

"On the other hand, if you find from the evidence beyond a reasonable doubt that the circumstances were such as to lead a rational man, a man of ordinary intelligence and observation, to know that

estray sheep were in the Aschenbrenner flock, such circumstances would be sufficient to justify you in finding that the defendants knew estray sheep were in the Aschenbrenner flock.''

The defendants excepted thereto ''on the grounds that it removes the element of intentionally committing the crime from the instructions and bases it upon acts of negligence which would not be sufficient to constitute the commission of a crime.''

In upholding the instruction the state cites decisions and textbooks on the question of knowledge in connection with receiving stolen property. It argues that proof of circumstances which would lead a man of ordinary intelligence and observation to know that estray sheep were in the Aschenbrenner flock would be sufficient to justify the jury in finding that the defendants had knowledge of the presence of estray sheep in that flock.

The knowledge which a defendant must be proved to have had in taking up an estray is, in our opinion, analogous with that of a defendant charged with receiving stolen property. Adjudications in regard to the latter crime are therefore appropriate for consideration and comparison in the case now before us. It is said in 53 C. J., Receiving Stolen Goods, § 22, page 510, that:

''. . . There is a conflict of authority as to whether, in the absence of actual knowledge, it will be sufficient to sustain a conviction that at the time of receiving the stolen property, accused knew of facts sufficient to satisfy a man of ordinary or reasonable intelligence or prudence that the property was stolen, some decisions holding that this may be sufficient, and others holding directly to the contrary, the view being taken in the latter decisions

that the test is as to the actual belief of defendant, and not what some other person would have believed in the circumstances attending the reception of the goods, that the well-settled rule in civil actions that knowledge of such facts as are sufficient to put a reasonably prudent man on inquiry is equivalent to notice is not the rule in criminal prosecutions, and that to permit accused to be convicted if the circumstances attending the reception of the property were such as would have satisfied a man of ordinary or reasonable intelligence or prudence that the property was stolen, would permit the conviction of a man, not because he was guilty, but because he was stupid, or lacked common prudence and diligence (a misfortune under which many labor)."

In *Kasle v. United States* (C. C. A., Sixth Circuit), 233 F. 878, an instruction substantially similar in effect to the one here assailed was held erroneous. The court therein said:

". . . The effect of such tests was to charge the accused with guilty knowledge or not upon what the jury might find would have induced belief in the mind of a man such as they were told to consider, rather than the belief that was actually created in the mind of the accused; or, at last, the accused might be condemned even if his only fault consisted in being less cautious or suspicious than honest men of average intelligence are of the acts of others. The result of the rule of the charge would be to convict a man, not because guilty, but because stupid. The issue was whether the accused had knowledge—not whether some other person would have obtained knowledge—that the goods had been stolen. The circumstances must have had that effect upon the mind of the accused, to constitute knowledge in him. The issue must be determined upon the individual test of the accused. It may well be that the tests stated in the charge are proper enough to fix civil liability for the acts or omissions of a defendant,

but hardly to fasten upon him an intent to commit a felony. There is some conflict in the decisions upon this subject, but we think the tests of the charge are opposed to the clear weight of authority'': citing numerous cases.

One of the decisions, probably the most frequently cited, in regard to the impropriety of an instruction such as concerned in the case at bar, is *State v. Alpert*, 88 Vt. 191, 92 A. 32, in which it is stated:

". . . Yet the effect of such an instruction is to make guilty knowledge of a respondent depend upon what the jury find would induce 'belief' in the mind of a 'reasonable man,' rather than upon what they find induced 'belief' in his own mind. One essential element of the offense is that the person, at the time he received the stolen goods, had knowledge that they had been stolen. If he did not have actual or positive knowledge, the question is whether from the circumstances *he*—not some other person —believed they had been stolen. The circumstances must have that effect upon his mind, to constitute knowledge by him. The question must be determined upon the individual test of the accused. The instruction given fell short of this and, in our opinion, is at variance with the true doctrine.''

It is our opinion that the clear weight of authority supports the doctrine announced in the two cases from which we have hereinabove quoted. See, for example, the following decisions: *Peterson v. United States* (C. C. A., Ninth Circuit), 213 F. 920; *Pounds v. United States* (C. C. A., Seventh Circuit), 265 F. 242; *Robinson v. State*, 84 Ind. 452; *Reser v. State*, 27 Ariz. 43, 229 P. 936; *State v. Denny*, 17 N. D. 519, 117 N. W. 869, followed in *State v. Marcovitz*, 63 N. D. 458, 248 N. W. 481; *Pickering v. United States*, 2 Okla. Cr. 197, 101 P. 123, followed in *Camp v. State*, 66 Okla. Cr. 20,

89 P. (2d) 378; *Forrester v. State,* 69 Tex. Cr. 62, 152 S. W. 1041; *State v. Ebbeller,* 283 Mo. 57, 222 S. W. 396, followed in *State v. Day,* 339 Mo. 74, 95 S. W. (2d) 1183; *State v. Stathos,* 208 N. C. 456, 181 S. E. 273; *State v. Hamilton,* 166 S. C. 274, 164 S. E. 639; *State v. Newman,* 127 Conn. 398, 17 A. (2d) 774; *Meath v. State,* 174 Wis. 80, 182 N. W. 334, followed in *Oosterwyk v. State,* 242 Wis. 398, 8 N. W. (2d) 346; *Cohn v. People,* 197 Ill. 482, 64 N. E. 306.

The following cases hold to the contrary: *Vacalis v. State,* 204 Ala. 345, 86 S. 92; *Francis v. State,* 154 Miss. 176, 122 S. 732; *Commonwealth v. Finn,* 108 Mass. 466; *State v. D'Adame,* 84 N. J. L. 836, 86 A. 414, Ann. Cas. 1914B, 1109; *State v. O'Neill,* 53 R. I. 497, 167 A. 263; *Gassenheimer v. United States,* 26 App. (D. C.) 432.

*State v. Feuerhaken,* 96 Iowa 299, 65 N. W. 299, *Sellers v. United States* (C. C. A., Fourth Circuit), 299 F. 258, and *State v. Rubenstein,* 69 Wash. 38, 124 P. 135, are cited by some of the text writers as holding that the test is that which would satisfy a man of ordinary intelligence and caution. In *State v. Feuerhaken,* supra, the court instructed the jury as follows:

> "If you find that all the facts and circumstances surrounding the receiving of the goods by defendant were such as would reasonably satisfy a man of defendant's age and intelligence that the goods were stolen, or if he failed to follow up such inquiry so suggested, for fear he would learn the truth and know that the goods were stolen, then the defendant should be as rigidly held responsible as if he had actual knowledge."

Therein the only question raised as to the quoted instruction concerned the use of the word "rigidly".

The court did not pass upon the correctness of the instruction as a whole.

In *Sellers v. United States,* supra, the court stated to the jurors, according to the opinion, that "if they found the circumstances were such as to produce in the mind of a man of ordinary prudence the belief that they were stolen goods, they might consider that fact in deciding whether defendant actually knew the goods were stolen". To give that instruction was entirely different, however, from saying that the existence of the circumstances described would justify a finding that the defendant had such knowledge.

The jury in *State v. Rubenstein,* supra, was instructed "that knowledge of any particular fact may be inferred from the knowledge of such other facts as would put an ordinarily prudent man upon inquiry; and it therefore is incumbent upon the state to prove in this case, beyond a reasonable doubt, either that the defendant had actual knowledge that the property was stolen, or that he was in possession of facts and circumstances which would put an ordinarily prudent man upon inquiry". On appeal it was held that the instruction was erroneous, and the judgment against the defendant was reversed. In discussing the language of the charge, the court observed:

> "The concluding clause of this instruction, we think, does not correctly state the rule. While the statute provides that knowledge of any particular fact may be inferred from the knowledge of such other facts as should put an ordinarily prudent man upon inquiry, it is not meant to be asserted thereby that the jury, in a case where knowledge is an essential element of a crime, may find that the accused had such knowledge on evidence that does not convince them of the fact beyond a reasonable doubt. . . . The statute lays down a rule of evidence,

not one of positive law. Its language is that knowledge of any particular fact 'may' be inferred from the knowledge of such other facts as should put an ordinarily prudent man upon inquiry, not that it 'must' be so inferred; hence it was error to instruct the jury that it is sufficient proof that the defendant had knowledge that the property received and disposed of by him was stolen property to prove beyond a reasonable doubt that he had knowledge of facts sufficient to put an ordinarily prudent person upon inquiry as to whether or not it was stolen property.''

■ We are of the opinion that the circuit court erred in instructing the jury that circumstances which would lead a man of ordinary intelligence and observation to know that estray sheep were in the Aschenbrenner flock "would be sufficient to justify" it "in finding that the defendants knew" that fact. It seldom happens that direct evidence can be produced that the accused had actual knowledge of a fact. And in the absence of direct evidence knowledge may be inferred from circumstances. The issue, however, was whether the defendants had knowledge that estray sheep were in the flock, not whether some other person would or could have obtained that knowledge under the circumstances disclosed by the evidence. It might have appeared to the jury that the defendants, or some of them, did not possess the intelligence or observation of an ordinary man, or that in a given instance they, or some of them, acted unwisely, unreasonably, imprudently or carelessly, but not with criminal intent. The instruction complained of was not only erroneous, but highly prejudicial to the defendants' rights.

*State v. Savan,* 148 Or. 423, 36 P. (2d) 594, 96 A. L. R. 497, cited by the respondent, is not in conflict

with the conclusion which we have herein reached. It was held in that case that there was sufficient evidence from which the jury could have found that the defendant "knew at the time or had good reason to believe that the property was stolen". The statute involved, § 23-530, O. C. L. A., unlike those concerned in many of the cases from other jurisdictions herein cited, required that the accused either know or have good reason to believe the property in question to be stolen.

■ We find no merit in the defendants' remaining assignments of error. The state was not required to prove that the defendants "intended to steal" the sheep, in order to establish their guilt. The essence of the crime of which they were accused was violation of the statute in failing to report their taking up of estrays.

The judgment appealed from is reversed and the cause is remanded for further proceedings.