STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
JAMES ROWE, DEFENDANT-APPELLANT.

Argued November 9, 1970—Decided December 21, 1970.

*Mrs. Susan T. Sinins,* Assistant Deputy Public Defender, argued the cause for defendant-appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mrs. Susan T. Sinins* on the brief).

*Mr. Robert L. Podvey,* Special Assistant Prosecutor, argued the cause for plaintiff-respondent (*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney; *Mr. Robert L. Podvey* on the brief).

· The opinion of the Court was delivered by

PROCTOR, J. The defendant James Rowe was indicted for knowingly receiving and having in his possession a stolen Cadillac automobile valued at $4,500 in violation of *N. J. S. A.* 2A:139-1. The jury found him guilty and he was fined $1,500 and placed on probation until the fine was paid. The Appellate Division affirmed the conviction in an unreported opinion. This Court granted defendant's petition for certification. 54 *N. J.* 502 (1969).

The State's proofs showed that in February, 1966, the defendant purchased a new Cadillac from Central Cadillac, Inc., an authorized dealer in Newark, and as part payment traded in a 1965 Cadillac later found to be a stolen vehicle. A representative of Central Cadillac testified that he appraised the 1965 car at about $4,000. He further stated that the serial number plate which was attached to the door post was broken so that one of the digits in the serial number was illegible. He had a mechanic check the serial number on the motor block and the number was found to coincide with that on the defendant's certificate of title. As a consequence, the representative accepted the 1965 car in trade.

There was also expert testimony that the serial number on the motor block which corresponded with the number on the certificate of title had been altered.[1] The true serial number was found at a secret third location on the car. This last number conclusively showed that the 1965 Cadillac was one which had been stolen from a hotel parking lot in East Orange in August of 1965.

Detective Coe of the New Jersey State Police testified that "William Jones" appeared as the owner of the stolen

---

[1] The testimony revealed that the altered number was "an impossible number" since it did not accord with production figures for the year in which the car was assembled. Oddly, this discrepancy was not discovered by Central Cadillac although the testimony indicated that the serial number was not within any conceivable realm of possibility.

vehicle on a counterfeit registration from the State of Minnesota. That registration was transferred to New Jersey on February 7, 1966, and listed a Montclair address for Jones. The address was later learned to be fictitious. Jones was never found. Coe further testified that he interviewed the defendant late in February, 1966, and that the defendant said that he had won $2,800 playing cards with Jones and that, since Jones did not have the money, he gave the car to the defendant.

The file in the Bureau of Division of Motor Vehicles covering the ownership of the 1965 Cadillac showed a Minnesota registration certificate issued to William Jones, an application for a certificate of ownership signed by Jones, 96 Lexington Avenue, Montclair, and dated February 7, 1966; a New Jersey certificate of ownership issued to Jones the same day; a certificate dated February 15, 1966 containing the signature of Jones and the defendant and indicating a transfer of ownership from Jones to defendant and from defendant to Central Cadillac. The last transfer occurred on February 17, 1966.

The defendant denied any knowledge or suspicion that the car was stolen. He testified that he started playing cards with Jones and others around the Christmas holidays in 1965, and that the games continued two or three times a week into February 1966. Jones owed him $2,800 for "various card games" and the defendant agreed to cancel this debt and pay an additional $1,200 for the car. He negotiated with Central Cadillac for the purchase of a 1966 Cadillac and was allowed $4,500 for trading in the 1965 Cadillac. He was given a check for $1,200 by Central Cadillac which he used to pay the balance due Jones. On cross-examination defendant said he was a partner in an automobile repair business.

Two witnesses, Wilson and Franklin, testified on behalf of the defendant. They said they were present at the various card games with Jones and the defendant. Franklin testified that Jones lost all his money playing cards, and that Jones

gave the defendant a bill of sale for his car in return for his debt.

On this appeal the defendant first urges that the trial judge committed plain error in his charge. First, he argues that by reading to the jury the enumerated statutory defenses contained in *N. J. S. A.* 2A:139-1, the trial judge unfairly left the impression with the jury that those defenses were exclusive. There is no merit to the contention. Although these five defenses should not be read to a jury, *State v. DiRienzo,* 53 *N. J.* 360, 378 (1969), the defendant here suffered no prejudice since his defense came squarely within one of the enumerated defenses, *viz.,* that he paid a fair and reasonable value for the car.

Defendant's second contention regarding the charge is that it eliminated the necessity for a jury finding that he actually knew that the car he possessed was a stolen vehicle. The charge stated three times that the defendant was being tried for receiving a stolen automobile under circumstances which "if he didn't know, he should have known" was stolen.

"So that we are dealing with a car that was stolen, and wound up in the hands of the defendant. *The State says that he knew it when he got it, and he got it under such circumstances that if he didn't know he should have known that it was a stolen automobile.* He denies the fact, that he didn't know a thing, and then he told us how he won this.

*         *         *         *         *         *         *         *

"*We are trying a man for receiving a stolen automobile under circumstances which if he didn't know he should have known had been stolen.* It's for you to determine that after a due consideration of all the facts.

*         *         *         *         *         *         *         *

"The third element is that at the time he received the stolen goods or had them in his possession he knew that they were stolen. Well, if he had admitted that, of course you wouldn't be here this afternoon. So you see what you've got to find out, under all the facts and circumstances did he receive this automobile knowing that it was stolen? Did he have knowledge that they were stolen goods, a stolen automobile. He denies that. *The State says he knew it, and that he should have known it if he didn't know it, one way or other, he should have.* And naturally we cross that bridge when we get there. But he denied it. Therefore, we are here to determine from the facts and circumstances whether he did know it. Okay." (emphasis added).

It is settled that the crime of receiving stolen goods under *N. J. S. A.* 2A:139–1 requires proof beyond a reasonable doubt of the possessor's knowledge that the goods were stolen. *State v. DiRienzo, supra,* 53 *N. J.* at 369, n. 2, 376; *State v. Vigorito,* 2 *N. J.* 185, 188 (1949) ; *State v. Laster,* 69 *N. J. Super.* 504 (App. Div. 1961). In fact, the indictment in the present case charged the defendant with "knowingly" receiving the stolen car. Our courts have held that a jury may infer guilty knowledge where the defendant receives stolen goods under circumstances which would satisfy a man of ordinary intelligence and caution that they were stolen. *State v. Gargare,* 88 *N. J. L.* 389 (E. & A. 1915) ; *State v. D'Adame,* 84 *N. J. L.* 386, 399 (E. & A. 1913) ; *State v. Feiss,* 74 *N. J. L.* 633, 636 (E. & A. 1907) ; *State v. Jusiak,* 16 *N. J. Super.* 177 (App. Div. 1951) ; *State v. Rose,* 5 *N. J. Misc.* 213 (Sup. Ct. 1927) ; *State v. Goldman,* 65 *N. J. L.* 394, 397–398 (Sup. Ct. 1900).[2] But

[2] We recognize that there is a conflict of authority on the issue of whether a jury may infer actual knowledge on the basis of an objective standard or a subjective standard. Using the objective standard a jury may infer defendant's guilty knowledge if it finds that a reasonable man would have such knowledge in the circumstances. *United States v. Werner,* 160 *F.* 2d 438 (2d Cir. 1947) ; *State v. Pambianchi,* 139 *Conn.* 543, 95 *A.* 2d 695 (1953). Where the subjective standard is used such an inference cannot be drawn. *State v. Aschenbrenner,* 171 *Or.* 664, 138 *P.* 2d 911 (1943) ; *State v. Alpert,* 88 *Vt.* 191, 92 *A.* 32 (1914). *See generally, Annotation,* "Knowledge imputed to reasonable man as test of knowledge of defendant in prosecution for larceny or receiving stolen property," 147 *A. L. R.* 1058. We think that New Jersey's approach to this problem is the most sensible. Ordinarily a jury may infer guilty knowledge where the circumstances are such that a man of ordinary intelligence and caution would have had such knowledge. But there is no reason why a defendant may not come forward with evidence showing that he may not be held to such a standard because of his age, intelligence or some other factor. See *State v. D'Adame,* 84 *N. J. L.* 386, 399 (E. & A. 1913). Nor is it impermissible for the State to produce evidence, as was done in the present case, that there are circumstances showing that the defendant because of his experience or occupation is more likely to possess actual knowledge than the average man. The inference is permissive only and is based on the assumption that, without proof to the contrary, every man is presumed to be a man of ordinary intelligence and caution. See 2 *Wharton, Criminal Law and Procedure,* 283 (1957).

this standard does not give a trial court the power to dispense with the requirement of actual knowledge. The gist of the offense is the actual state of the defendant's mind when he receives the property. Of course, knowledge is a matter of fact which ordinarily cannot be proved by direct evidence. Frequently the triers of fact must resort to proof by inference, and therefore the circumstances which were known to the defendant at the time he obtained the goods may be important factors as tending to show that he knew the goods were stolen. And when these circumstances are such as to satisfy a man of ordinary intelligence and caution that the. goods had been stolen, the jury may rightfully infer the existence of such knowledge by the defendant. But, even so, the ultimate fact which the jury must find before a conviction is warranted is that the defendant had actual knowledge. Mere negligence in not realizing that the property is stolen does not justify a conviction. *State v. Rountree,* 80 *S. C.* 387, 61 *S. E.* 1072, 22 *L. R. A.,* N. S., 833 (1908) ; *Perkins, Criminal Law,* 278 (1957). As was said by the Supreme Court of South Carolina in *State v. Rountree*:

"It cannot be successfully contended that a mere inadvertent failure to pursue an inquiry with reasonable diligence is the equivalent of guilty knowledge and of fraudulent intent, which are essential elements of the crime, as otherwise a person could be punished, under the statute, for negligence unaccompanied with intentional wrong. 'Knowledge of the theft on the part of the receiver is an essential element of the offense, and such knowledge must exist at the moment the property is received.'" 80 *S. C.* at 391–392, 61 S. E. at 1073, 22 L. R. A., N. S., at 838.

In the frequently cited case of *State v. Goldman, supra,* our former Supreme Court reversed a conviction for knowingly receiving stolen goods because of the following charge to the jury:

"That which a man ought to have suspected, in the position of the defendant, he should have suspected, and he must be regarded as having suspected, in order to put himself upon his guard and upon inquiry. The proof in any case is to be inferential." 65 *N. J. L.* at 397.

In holding the charge was prejudicial to the defendant, the court said:

"It was a statement to the jury that they might find knowledge in the defendant (that is, criminal knowledge; intent to receive the goods, knowing them to have been stolen), because he ought to have suspected that which the jury might think he should have suspected, and that he must be regarded as having suspected that which the jury might think he should have suspected, and the adding to what the court said upon this subject right in the same connection, the statement that 'the proof in any case is to be inferential,' intensified the misleading character of this instruction.

"The proof must be that the defendant had knowledge, not that he had suspicions. Suspicious circumstances, it is true, may be a part of the circumstances from which knowledge may be inferred; but the jury must be satisfied that these circumstances were of such a character, when taken in connection with the whole transaction, as to lead to the conclusion that the defendant knew that the goods were stolen." *Id.* at 398.

The erroneous charge in *Goldman* was similar to that in the present case. Both charges allowed the jury to convict without a finding of actual knowledge by the defendant. In the present case we, of course, have no way of knowing whether the jury rejected defendant's version of the events as a pure fabrication, or whether it accepted his story that he did not know the car was stolen and held him accountable anyway since it believed he should have known. The latter possibility is not unlikely since the defendant alleged that he obtained the car for a gambling debt. The jury might well have concluded that anyone who obtained a car in this manner should have been put on guard. And it might have reached this conclusion even though it did not believe the defendant actually knew the car was stolen. Thus, the charge permitted the jury to convict the defendant for an innocent act and it therefore had the clear capacity to prejudice his rights. *Commonwealth v. Boris,* 317 *Mass.* 309, 58 *N. E.* 2d 8 (1944); 2 *Wharton, Criminal Law and Procedure,* 280–86 (1957).

The State argues that in other parts of the charge, the jury was correctly instructed that the defendant must have

knowingly possessed the stolen goods if a verdict of guilty was to be returned. It is true that parts of the charge made reference to the defendant's "guilty knowledge." The jury could have understood this to mean actual knowledge, but at best it would have resulted in a charge containing conflicting legal principles. There is no doubt that such a charge is erroneous. *Brown v. Public Service Ry. Co.*, 98 *N. J. L.* 747, 754 (E. & A. 1923) ; *Davidson v. Fornicola*, 38 *N. J. Super.* 365, 371 (App. Div. 1955).

We conclude that it was plain error to charge the jury that receipt of stolen property under circumstances where the defendant *should have known* they were stolen is sufficient in itself to constitute guilt of the offense. See *R.* 2:10–2.

Defendant raises several other grounds, but because we are reversing, we deal only with those matters which are likely to come up on a new trial.

▉ The trial court permitted testimony regarding defense witness Franklin's convictions for nonindictable offenses and commented that he had a lengthy arrest record.[3] It was brought out, over defendant's objection, that Franklin had been convicted of "driving without a license, failing to give a good account of myself; violating probation." The court then asked to see the witness's arrest record and commented that he had "a lot of involvements." There is no question that neither these convictions nor the trial court's comment had any place in the trial. See *State v. Pacheco*, 38 *N. J.* 120, 128 (1962) ; *State v. Kociolek*, 23 *N. J.* 400, 420 (1967) ; *State v. Landeros*, 20 *N. J.* 69, 72 (1955). Since Franklin was the only witness to corroborate defendant's version of the events leading to his obtaining the stolen automobile, the testimony and the remark were particularly damaging to the defendant. *State v. Searles*, 82 *N. J. Super.* 210, 215 (App. Div. 1964). The error was not cured in the

---

[3] Defendant also contends that the court erred in its handling of the witness Wilson's prior criminal record. However, we find that the defendant suffered no prejudice in this regard.

judge's general charge to the jury. The charge implied that Franklin's arrests had resulted from acts of misconduct; it did not explain that persons arrested may be innocent of the charged offenses. Nor did it explain that the nonindictable offenses could not be used to weigh the witness's credibility.

▮ Defendant urges that certain remarks made by the trial judge to defense counsel were prejudicial. The record shows that the judge made several intemperate remarks to counsel in the presence of the jury. These remarks had no place in the trial. If the court is dissatisfied with an attorney's conduct, any reprimands should ordinarily be made outside of the presence of the jury.

▮ Finally, there is no merit to defendant's argument that he was improperly indicted under *N. J. S. A.* 2A:139-1 rather than *N. J. S. A.* 2A:139-3 which deals specifically with receiving a stolen motor vehicle. *State v. Bott,* 53 *N. J.* 391, 403 (1969). However, since our decision calls for a new trial, the trial court is directed to amend the indictment to recite the correct statute.

The judgment of the Appellate Division is reversed and the case is remanded for a new trial.

*For reversal*—Chief Justice WEINTRAUB and Justices FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.

*For affirmance*—None.