Argued March 30, reversed and remanded April 23, 1973

## STATE OF OREGON, *Respondent, v.* ROBERT EARL THOMAS (No. C-72-09-2777 Cr), *Appellant.*

509 P2d 446

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

SCHWAB, C. J.

Defendant was convicted of second-degree theft (ORS 164.045) in the district court of Multnomah County. He appealed to the circuit court where he was convicted of the same offense after a jury trial. On appeal, defendant makes three assignments of error: (1) the complaint was deficient because in charging theft without specifying the method by which the theft was carried out, it failed to inform the defendant of the nature of the crime alleged; (2) the state should have been required to elect upon which theory of theft it intended to proceed so that defendant could adequately prepare his defense; and (3) the court erred in instructing the jury that a person is guilty of theft by receiving "if he receives, obtains [sic], conceals or disposes of property of another knowing or *having good reason to know* that the property was the subject of theft."[1] (Emphasis supplied.)

---

[1] ORS 164.095 reads as follows:

"(1) A person commits theft by receiving if he receives, retains, conceals or disposes of property of another knowing

At the trial, the complainant, Gary Passmore, testified that on March 28, 1972, at about 7 p.m., he and his family had gone shopping at the Lloyd Center in Portland. He left his locked car in the Center's parking lot with a tape deck and approximately ten tapes in the locked glove compartment. As he was returning to his car about 7:30 p.m., he saw a person closing the passenger door of his car. That person then got into a car parked next to Mr. Passmore's and drove away. The complainant was able to vaguely describe the person, and got the license number and a description of the car. There was a second person in the car whom complainant was unable to describe. When he returned to his car, he saw that the glove compartment had been pried open and the tape deck and tapes were gone. He reported the theft to the police at 7:50 p.m., and gave them the license number and a general description of the thief and his car.

The police officers who took the report testified that at 10:25 p.m. on the same day they stopped a car matching the complainant's description and bearing the same license plates. The defendant was alone in the car, and fit the general description given by the complainant. The officers found the stolen tape deck and several tapes in defendant's car, and a screwdriver with a long, thin blade on the floor of the front seat.

The complainant was unable to identify the defendant as the person he had seen leaving his car. The defendant did not testify at trial, but had answered

---

or having good reason to know that the property was the subject of theft.

"(2) 'Receiving' means acquiring possession, control or title, or lending on the security of the property."

questions asked by the arresting officers, and later by the detective. These officers all testified that defendant said that he had had the tape deck for about three months. On cross-examination, the detective testified that the defendant might have said the tape deck was in his car, and that he had owned the car for three months.

The trial judge instructed the jury as to the elements of the crime of theft by reading to them the relevant sections of the statutes; specifically, ORS 164.015 " 'Theft' described," and ORS 164.095 "Theft by receiving." The defendant objected to the latter instruction on the basis that it allowed conviction if the jury found that defendant had "good reason to know" the property in his car was stolen, even if they also found that he did not actually know it to be stolen.

The jury interrupted their deliberations to ask the following question: "If a person has a stolen item in his possession and he is not aware that it is stolen, is he guilty of a crime?" Without directly answering the question, the trial judge again read them the statute. The jury subsequently found the defendant guilty.

I

■ Defendant first assigns as error the overruling of his demurrer to the complaint and the denial of his motion for judgment of acquittal. The complaint in this case reads as follows:

"The said defendant on or about the 28th day of March, 1972, in Multnomah County, State of Oregon, did unlawfully and knowingly commit theft of One (1) Roberts 8-Track Stereo Tape Deck and pre-recorded "Chicago" 8-track tape, of the

total value of less than Two Hundred Dollars, the property of Gary Leonard Passmore."

The substance of the defendant's contention is that the complaint was deficient because it failed to state the manner in which the theft charged was carried out, i.e., whether by "taking" or by "receiving." Defendant in effect asserts a constitutional right to rely on the technical distinctions among the various common-law crimes of larceny and related offenses, even though they have been redefined by statute. This argument was considered and resolved adversely to the defendant's position in *State v. Jim/White,* 13 Or App 201, 508 P2d 462, Sup Ct *review denied* (1973).

## II

■ Defendant's second assignment of error is a variation of the first. Here, he urges that the state is required to elect, at the close of its case instead of at the pleading stage, which common-law crime it seeks to prove. This argument was considered and likewise resolved adversely to defendant's position in *State v. Davis,* 13 Or App 225, 508 P2d 471, Sup Ct *review denied* (1973).

## III

Finally, defendant contends that the trial court erred in instructing the jury on the mental element of theft by receiving. The instructions were, in pertinent part:

> "A person commits theft by receiving if he receives, obtains [sic], conceals or disposes of property of another knowing or *having good reason to know* that the property was the subject of theft." (Emphasis supplied.)

Defendant excepted to the emphasized portion of

the instructions, on the ground that the jury should be required to find that the defendant had actual knowledge that the property was stolen before they could convict.

His objection raises two questions. First, whether ORS 164.095 indeed requires actual knowledge or belief, as did former ORS 165.045, or whether instead the legislature intended to authorize conviction of one who did not know the property was stolen, so long as the jury found that he had "good reason to know," i.e., that under the circumstances known to the defendant a "reasonable man" would have known.[②] Second, whether, if the statute requires actual knowledge, an instruction in the words of the statute is so misleading as to be erroneous.

▪■ ORS 164.095 describes the requisite mental state as "knowing or having good reason to know that the property was the subject of theft." This is substantially a reenactment of the comparable provision in former ORS 165.045, "knowing or having good reason to believe that it [the property] was stolen," Commentary, Proposed Oregon Criminal Code § 129, p 129. Former ORS 165.045 was interpreted in *State v. Redeman,* 9 Or App 329, 496 P2d 230 (1972). There we acknowledged that similarly worded statutes have been construed otherwise in different states. We there said: "We hold that ORS 165.045 requires actual knowledge

---

[②] *See, e.g.,* Restatement (Second) of Torts § 12, Comment, p 20:

"* * * 'Reason to know' means that the actor has knowledge of facts from which a reasonable man of ordinary intelligence * * * would either infer the existence of the fact in question or would regard its existence as so highly probable that his conduct would be predicated upon the assumption that the fact did exist * * *."

or belief by defendant that the property is stolen * * *." 9 Or App at 337.

The only change in the wording of the new statute is the use of the word "know" in place of "believe." As we noted in *State v. Redeman,* supra: "Although as a matter of semantics, 'knowledge' differs from 'belief,' in respect to receiving and concealing statutes the two are generally used synonymously * * *." 9 Or App at 337, n 5. We conclude that ORS 164.095 imposes the same requirements for conviction as did its predecessor, former ORS 165.045.

■■ Having construed ORS 164.095 as requiring a finding of defendant's actual knowledge or belief for conviction, the question remains whether the statute is sufficiently ambiguous as to make an instruction in the words of the statute erroneous. We hold that it is. The rule was clearly expressed in *State v. Aschenbrenner,* 171 Or 664, 138 P2d 911, 147 ALR 1052 (1943), and quoted with approval in *State v. Redeman,* supra:

> " ' "* * * Yet the effect of such an instruction ['reasonable person'] is to make guilty knowledge of a respondent depend upon what the jury find would induce 'belief' in the mind of a 'reasonable man,' rather than upon what they find induced 'belief' in his own mind. One essential element of the offense is that the person, at the time he received the stolen goods, had knowledge that they had been stolen. *If he did not have actual or positive knowledge, the question is whether from the circumstances he—not some other person—believed they had been stolen.* The circumstances must have that effect upon his mind, to constitute knowledge by him. The question must be determined upon the individual test of the accused * * *." ' 171 Or at 671. (Emphasis supplied.)" 9 Or App at 336-37.

■ In the absence of direct evidence a jury may

draw reasonable inferences as to whether, from the facts and circumstances, the defendant knew or believed the property was stolen. While the jury may *infer* actual knowledge or belief by defendant from facts constituting "good reason to know," it is essential that they understand that unless they make that inference, they cannot convict. An instruction in the words of the statute alone does not make that clear. The resulting confusion on the essential point is evidenced by the jury's question in this case: "If a person has a stolen item in his possession and he is not aware that it is stolen, is he guilty of a crime?"

■ The state contends that the instructions were not erroneous since the trial judge did not specifically instruct the jury that "having good reason to know" injected a "reasonable man" test into their deliberations, which was the language held erroneous in the *Aschenbrenner* and *Redeman* cases.[9]

The effect of the instructions given here may well have been the same. As in the *Aschenbrenner* case,

"* * * It might have appeared to the jury that the * * * [defendant] * * * did not possess the intelligence or observation of an ordinary man, or that in a given instance [he] * * * acted unwisely, unreasonably, imprudently or carelessly, but not with criminal intent. The instruction complained ed of was not only erroneous, but highly prejudicial to the * * * [defendant's] rights." 171 Or at 674.

The facts herein support the possibility that defendant was not in his car at the time of the theft, and that upon using his car later in the evening, de-

---

[9] *See also,* State v. Neel, 8 Or App 142, 493 P2d 740 (1972); State v. McIntosh, 4 Or App 407, 477 P2d 228 (1970), 479 P2d 763 (1971); State v. Gulbrandson, 2 Or App 511, 470 P2d 160 (1970).

fendant believed that the tape deck belonged to the earlier user and had been left in his car temporarily. The jurors, or some of them, may have believed that defendant was not aware that the property was stolen, yet under the instructions have concluded that defendant should have surmised otherwise, and believed the latter conclusion sufficient for conviction.

For the reasons stated above we find the statutory phrase, "having good reason to know," to be ambiguous. We resolve the ambiguity by interpreting it to mean belief by the defendant. The limitations of language in conveying ideas are such that resolution of ambiguities is many times only a matter of degree. Nevertheless, even if absolute precision is not attainable, jury instructions should be couched in as unambiguous terms as can be devised. To meet the requirements of *Aschenbrenner* and *Redeman,* an instruction dealing with the provisions of ORS 164.095 should simply advise a jury that the culpable mental state required is actual knowledge on the part of the defendant, or belief by the defendant that the property was the subject of theft.

Reversed and remanded.