Argued and submitted January 23, affirmed May 4, reconsideration denied June 18, petition for review denied August 4, 1981 (291 Or 419)

# STATE OF OREGON,
*Respondent,*

*v.*

# FRANK MERLE WEISSENFLUH,
*Appellant.*

## (No. C7595, CA 18047)

627 P2d 517

W. Eugene Hallman, Pendleton, argued the cause for appellant. With him on the brief was Mautz and Hallman, Pendleton.

Karen H. Green, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James M. Brown, Attorney General, John R. McCulloch, Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

**WARDEN, J.**

Defendant appeals from his conviction of Forgery in the First Degree for passing a counterfeit $100 bill. Trial was to the court. Defendant assigns error to: (1) the use of a "practically certain" standard to find that defendant knew the bill was counterfeit; and (2) the denial of defendant's motion for directed verdict for lack of sufficient evidence on the two elements of knowledge and intent to defraud. We affirm.

We review the facts in the light most favorable to the state. *State v. Steffen,* 39 Or App 571, 573, 592 P2d 1081 (1979). In cashing a third-party check for $2,000 at a bank in Milton-Freewater, defendant obtained the $100 bill in question. Later that day at a bank in Hermiston, he attempted to make a deposit which included the bill. The bank teller thought the bill felt funny and "stuck out like a sore thumb." She called over the manager, who decided that he would not accept the bill. The manager explained to defendant that the bill could be sent to Portland for analyzing. If it turned out to be good, his account would be credited with $100; if not, he would lose the $100. Although it was usual bank policy to take currency suspected to be counterfeit and have it analyzed, in this case the bank manager did not follow that procedure. Defendant took the bill back. He told the teller he did not want to "get stuck" with the bill. He made a small tear in the top of it and said: "Yeah, it is a fluke, all right," in the presence of the teller. He made up the difference in the deposit by check.

Defendant did not return the bill to the bank in Milton-Freewater. The next day he had dinner at a restaurant in Long Creek, a community in which he had been a well-known resident for many years. After dinner, he went to the bar and sat down at a table with a number of other persons he knew. When it became his turn to buy a round of drinks, he pulled out the $100 bill. The bill was discussed by those at the table. Defendant stated that if the bill was good, he would spend it. If it was bad, he would "pick it up." He also told someone at the table that he himself thought the bill was bad. That person expressed the opinion that anybody could see the bill was counterfeit. The bartender, who was somewhat rushed, picked up the bill at the table.

She noticed a lot of "tittering or giddishness" around the table as she did so. The bill felt to her like a slick new bill. Defendant remained in the bar for about four more hours. The bill was singled out at closing time by the owner of the bar. It was ultimately determined to be counterfeit.

ORS 165.007(1)(b)[1] provides that a person commits forgery if he utters (i.e., puts into circulation) a written instrument which he knows to be forged. ORS 161.085(8)[2] defines "knowingly" or "with knowledge" as an "awareness * * * that a circumstance * * * exists." We equate "knows," as used in ORS 165.007(1)(b), with the term "with knowledge," as defined in ORS 161.085(8). The awareness must be actual but can be inferred from the circumstances by the trier of fact. *State v. Neal,* 8 Or App 142, 147, 493 P2d 740 (1972).

The trial judge here explained the standard he was employing on the element of knowledge:

"I find then that the defendant believed the bill to be counterfeit, but I cannot make a finding that he knew that beyond a shadow of a doubt in his own mind. He was I believe practically certain it was counterfeit, but I cannot find that he was absolutely certain of that."

We interpret this to mean that the trial judge found that defendant believed the bill was counterfeit, or was "practically certain" it was, but that his knowledge was less than absolute.

---

[1] ORS 165.007(1)(b) provides:

"(1) A person commits the crime of forgery in the second degree if, with intent to injure or defraud, he:

" * * * * *

"(b) Utters a written instrument which he knows to be forged."

[2] ORS 161.085(8) provides:

"As used in chapter 743, Oregon Laws 1971, and ORS 166.635, unless context requires otherwise:

" * * * * *

"(8) 'Knowingly' or 'with knowledge,' when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that his conduct is of a nature so described or that a circumstance so described exists."

■ ■     Defendant argues that the trial judge applied an erroneous standard. The criminal standard of "proof beyond a reasonable doubt" does not, however, require that a defendant charged with this kind of forgery know "beyond a shadow of a doubt" that a piece of currency is counterfeit. That would pose insurmountable proof problems in cases of persons knowingly circulating counterfeit currency who had not manufactured it personally or had not had an unimpeachable source analyze it. We feel that being "practically certain" in this case is tantamount to having an "awareness that a circumstance exists." The trial court stated more than once that defendant "believed" the bill was counterfeit. We have noted that knowledge and belief are synonymous terms. *State v. Thomas,* 13 Or App 164, 171, 509 P2d 446 (1973). Moreover, this was a trial to the court. While we do not go so far as to approve the use of the term "practically certain" in jury instructions concerning the element of knowledge,[3] we conclude that the trial court in this case applied correct legal test for the element of knowledge involved in the offense of forgery.

■     We turn to the sufficiency of the evidence on the elements of knowledge and intent to defraud. From the evidence in the record, the trier of fact could rationally have concluded that defendant believed the bill was counterfeit when he made the observation, "Yeah, it is a fluke, all right." This inference is supported by the bank's unwillingness to accept the bill without having it examined in

---

[3] The source of the trial court's use of this term in this context is the discussion by the Criminal Law Revision Commission in the Proposed Oregon Criminal Code, 10, Commentary, §§ 7 to 10 (1970). Oregon follows the New York approach of substituting the concept of "intentionally" instead of "knowingly," in the sense in which a person achieves a given result "knowingly" when he is "practically certain" that his conduct will cause that result. Hence, Oregon does not use the word "knowingly" in defining "result" offenses. In defining classes of culpability, Oregon otherwise follows the Model Penal Code.

As the Comments to the Model Penal Code make clear, (see ALI, Model Penal Code, Tentative Draft No. 4 (1955), § 2.02 at 124), material elements of offenses vary in that they may involve (1) the nature of the forbidden conduct, (2) the attendant circumstances or (3) the result of conduct. With respect to degrees of culpability, including knowledge, the drafters felt these distinctions were necessary and sufficient for the purposes of penal legislation. The borrowing of the term "practically certain" from the category of result offenses to be used to define elements involving "attendant circumstances" tends to muddy these distinctions. The best approach is simply to adhere to the statutory phrase "awareness * * * that a circumstance * * * exists."

Portland and by defendant's unwillingness to accept the risk that the bill might not pass expert examination. There was, in addition, testimony which, if believed, showed that defendant told a friend at the table in the bar that he himself thought the bill was bad. From other evidence it can be inferred that defendant's chief concern was that he not get "stuck" with a bogus $100 bill. The teller testified that he told her that. The same concern was expressed to two investigating police officers who spoke with defendant sometime later. A rational trier of fact could have concluded, as did the trial court here, that defendant's preoccupation with avoiding the loss was some evidence of a belief that the bill was not genuine. We conclude there was sufficient evidence to support the conclusion that defendant was aware the bill was counterfeit.

■ Defendant's primary argument with respect to intent to defraud is that because defendant intended to reimburse the owner of the bar if the bill turned out to be counterfeit, the requisite intent was lacking. The commentary of the Criminal Law Revision Commission, however, states:

"The prosecution need not prove an intent to defraud a particular person, a general intent to defraud being sufficient. *State v. Frasier,* 94 Or 90, 180 P 520 (1919); ORS 165.190." Proposed Oregon Criminal Code, 159, Commentary, § 152 (1970).

As mentioned before, there was evidence showing that defendant's chief concern was avoiding being stuck with a phony bill. The trial court made the following point:

"The defendant has argued, and I am sure it is quite true, that if [sic] he is a well-known person in Long Creek and that under those circumstances he wouldn't pass a bill he knew to be bad. I believe all the evidence I have heard about Mr. Weissenfluh's standing in Long Creek. This I believe though could be the very reason that the defendant would do it. He probably thought that if the bank didn't take the bill, that [the owner of the bar] would let him know and he could make it good. I don't believe that alters the fact that he intended to try to recoup, however, by passing the bill to another, and the natural consequence of that is to injure that person or somebody down the line who would come into possession of that bill.

" * * * * *

"As I said, I am aware of the evidence concerning the defendant's reputation and standing in the community of Long Creek. I don't think there is any question. He obviously was not an actively criminal person; normally, usually an honest and upright person. As I said, however, in this case, I believe that the defendant misconstrued his ability to make it right when the counterfeit bill was discovered. In a close community, a belief can be understood, but I don't think it can be considered as wiping out the general intent to defraud or injure somebody by this act, because if he succeeded passing which I find he thought to a practical certainty was a forged bill, somebody down the line was going to be defrauded obviously."

We conclude the evidence was sufficient to support the trier of fact's finding that defendant had a generalized intent to defraud someone by passing a counterfeit bill.

Affirmed.