Argued and submitted September 4, affirmed October 15, 1980

# STATE OF OREGON,
*Respondent,*

*v.*

# JOHN WAYNE QUINN,
*Petitioner.*

(No. C 79-02-30576, CA 16275, SC 27126)

618 P2d 412

Gary D. Babcock, Public Defender, Salem, argued the cause for petitioner.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent.

TANZER, J.

## TANZER, J.

Defendant was convicted of murder and sentenced to death. He appealed to the Court of Appeals, which dismissed his appeal, citing the parallel case of *State v. Warren,* 46 Or App 253, 611 P2d 342 (1980). In *Warren,* the Court of Appeals dismissed an appeal of a murder conviction and death sentence on the ground that it had no jurisdiction because ORS 163.116(5) provided for automatic review by the Supreme Court as the sole means of appeal in such a case.[1] We granted review to determine whether, in addition to automatic Supreme Court review, a defendant sentenced to death is entitled to an appeal to the Court of Appeals and discretionary Supreme Court review under the general appeal statutes. For reasons similar to those of the Court of Appeals, we conclude that he does not.

ORS 2.516 provides that unless there is a specific provision otherwise, all appeals are heard by the Court of Appeals:

"Except where original jurisdiction is conferred on the Supreme Court by the Constitution of Oregon or by statute, the Court of Appeals shall have exclusive jurisdiction of all appeals."

Original appellate jurisdiction in capital cases is conferred on the Supreme Court by ORS 163.116(5), which was enacted subsequent to the enactment of ORS 2.516. Under ORS 174.020,[2] the specific provisions of ORS 163.116(5) prevail over the general provisions of ORS 2.516.

■ In addition to the rule of statutory construction, however, the words and provisions of ORS 163.116(5) clearly imply that direct automatic review is to be the sole appellate review in capital cases. In

---

[1] We dismissed the petition for review in *Warren* on different grounds. 289 Or 677 (1980). That case will be automatically reviewed.

[2] ORS 174.020 provides:

"In the construction of a statute the intention of the legislature is to be pursued if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent shall control a general one that is inconsistent with it."

the general election of 1978, the people of Oregon adopted Ballot Measure 8 (Or Laws 1979, ch 2), an initiative measure restoring the death penalty in murder cases.[3] ORS 163.116(5) is the part of the measure which provides for automatic Supreme Court review of any death sentence:

> "The judgment of conviction and sentence of death shall be subject to automatic review by the Supreme Court within 60 days after certification of the entire record by the sentencing court, unless an additional period not exceeding 30 days is extended by the Supreme Court for good cause. The review by the Supreme Court shall have priority over all other cases, and shall be heard in accordance with rules promulgated by the Supreme Court."

The wording of ORS 163.116(5) contains no implication that the Supreme Court review is to be a review of the Court of Appeals' decision rather than the judgment of the trial court. Nor does it imply that the Supreme Court review is to duplicate an appeal to the Court of Appeals either simultaneously or thereafter. To the contrary, the meaning conveyed is that the appeal in such cases is in the Supreme Court. By use of the phrase "conviction and sentence" in the context in which it is used, the statute requires that the Supreme Court review both the finding of guilt and the punishment of death imposed as a result of that finding. Moreover, ORS 163.116(5) mandates direct review of capital cases by the Supreme Court within 60 or 90 days from certification of the record. This time limitation for appeals which are likely to be comprehensive and difficult is stringent for review by one court and utterly impracticable for a two-level appeal. It is unlikely, therefore, that the limitation was intended to regulate appellate review by two courts. Finally, if it was intended that the defendant should have two appeals, one by choice to the Court of Appeals and

---

[3] Capital punishment was first abolished in Oregon, by constitutional amendment, in 1914 (Or Laws 1915, at 12), revived in 1920 (Or Laws 1921, at 6), and abolished again in 1964 (Or Laws 1965, at 6).

another automatically to the Supreme Court, the drafters may be expected to have employed express language rather than silent implication.[4]

■ The Public Defender argues that affording two levels of appellate review would be consistent with the spirit, if not the words, of ORS 163.116(5). We conclude, however, that the underlying intent of the initiative, both as a matter of semantics and legislative spirit, is to provide for one complete and expeditious appellate review in the court of last resort.

■■ Defendant also makes passing reference in his brief to providing "equal protection of law for defendants appealing their conviction" by allowing "a maximum number of jurists to review death penalty cases." We take this to be an invocation of the equal privileges clause of the Oregon Constitution, Art I, § 20, and the equal protection clause of the 14th Amendment to the United States Constitution. A non-capital criminal case is reviewed on appeal by the Court of Appeals subject to correction by the Supreme Court upon petition of either party. If a party petitions for review, the case is ultimately disposed of by the Supreme Court either by denial or allowance of review. Capital cases are also disposed of by the Supreme Court, except that the review is automatic and direct rather than discretionary and ultimate. In either case, a defendant receives the benefit of appellate review within the oversight of the Supreme Court. The affording of basic rights in different form to criminal defendants is constitutionally permissible if the difference is based upon a rational distinction. The difference in the magnitude of punishment between deprivation of liberty and deprivation of life justifies

---

[4] These observations are also applicable to ORS 137.465(1), enacted as part of the same initiative measure, which provides that a defendant sentenced to death shall be delivered by the sheriff to the Oregon State Penitentiary for lodging "pending the determination of the automatic review by the Supreme Court." It makes no provision for the lodging of the defendant during an appeal to the Court of Appeals, implying that Supreme Court review is the only appellate review comprehended by initiative.

the distinction between intermediate appellate review with discretionary Supreme Court review in noncapital cases and mandatory Supreme Court review in capital cases. We therefore conclude that it is not necessary to construe ORS 163.116(5) as allowing duplicate appeals to the Court of Appeals in order to save the statute from constitutional infirmity.

Because the enactment of ORS 163.116(5) provides an exclusive appellate remedy in capital cases, there was no jurisdiction in the Court of Appeals to hear this case and the dismissal of the appeal by the Court of Appeals was correct. Automatic direct review shall proceed forthwith under the provisions of Rule 2.15(5).

Affirmed.

**LENT, J.,** dissenting.

I cannot agree with the majority that the provision in ORS 163.116(5) making the "judgment of conviction and sentence of death * * * subject to automatic *review* by the Supreme Court" (emphasis added) deprives the defendant who cares to exercise it of his appeal "as a matter of right" to the Court of Appeals under ORS 2.516 and 138.020.[1]

The Oregon Constitution formerly provided for capital punishment. Until repeal of that part of the constitution by vote of the people at the November General Election in 1964, the statutes provided for an automatic "appeal" to the Supreme Court.

"ORS 138.410(1) When judgment of death is entered and no appeal to the Supreme Court theretofore has been taken, an appeal to the Supreme Court is deemed to have been taken by the defendant, without

---

[1] Those sections are as follows:

ORS 2.516: "Except where original jurisdiction is conferred on the Supreme Court by the Constitution of Oregon or by statute, the Court of Appeals shall have exclusive jurisdiction of all appeals."

ORS 138.020: "Either the state or the defendant may as a matter of right appeal from a judgment in a criminal action in the cases prescribed in ORS 138.010 to 138.300, and not otherwise."

any action by him or his counsel on the thirty-fifth day (or, if that day is a nonjudicial day, on the next judicial day thereafter) after the entry of the judgment.

"(2) When an automatic appeal to the Supreme Court is taken as provided in subsection (1) of this section, the clerk of the trial court, within 70 days after the entry of the judgment, shall file with the Clerk of the Supreme Court the trial court file, a transcript of all the testimony, all the instructions given and requested and all the exhibits."

ORS 138.420 provided for the appointment of counsel and service of the "notice of the appeal." ORS 138.430 provided that, except as otherwise statutorily specified, the automatic appeal was to be prosecuted in the same manner as any other appeal by a defendant in a criminal case.

Those three sections of ORS were repealed by the legislature in 1967 in an Act designed to eliminate "obsolete statutory references to the death penalty." Or Laws 1967, ch 372, § 13.

In the November General Election in 1978 the people restored the death penalty as a part of the statutory law. Ballot Measure 8 (Or Laws 1979, ch 2). Section 3(5) of Ballot Measure 8 (since codified as ORS 163.116(5)) provided:

"The judgment of conviction and sentence of death shall be subject to automatic review by the Supreme Court within 60 days after certification of the entire record by the sentencing court, unless an additional period not exceeding 30 days is extended by the Supreme Court for good cause. The review by the Supreme Court shall have priority over all other cases, and shall be heard in accordance with rules promulgated by the Supreme Court."

Neither Ballot Measure 8 nor any legislation in the ensuing 1979 session of the Legislative Assembly sought to flesh out what was meant by the provision for automatic "review" as distinguished from the right of "appeal" to the Court of Appeals guaranteed to all convicted criminal defendants by ORS 2.516 and ORS chapter 138 and the right to petition the Supreme Court to allow discretionary review under ORS 2.520.

Interpreting ORS 163.116(5) as requiring it, this court proceeded with the "promulgation" of a rule.[2] Under date January 24, 1980, a proposed rule

[2] Rule 2.15, Automatic Review in Death Sentence Case, Supreme Court and Court of Appeals of the State of Oregon Rules of Appellate Procedure, provides:

"Whenever a defendant is sentenced to death, the judgment of conviction and the sentence of death are subject to automatic review by the Supreme Court.

"Upon the entry of a judgment imposing a sentence of death, the trial court clerk or administrator shall forthwith forward to the Supreme Court a copy of the judgment with its date of entry, together with the names, mailing addresses and telephone numbers of the attorneys representing the State and the defendant at the time of entry of judgment and the name, address and telephone number of the official reporter or reporters who reported any portion of the proceeding. The copy of the judgment and the other information referred to above shall have a cover sheet showing the court from which the review is taken, the title of the case, the name of the judge imposing the sentence, the trial court case number, and the following caption: 'Automatic Death Sentence Review.' Said copy and cover sheet shall be served by the trial court clerk or administrator upon the defendant, counsel on both sides, and all affected court reporters.

"Service of the copy of the automatic death sentence review papers upon the reporter or reporters shall serve as an order to that reporter or those reporters to prepare a transcript of all parts of all proceedings other than selection of the jury, including all preliminary hearings, the trial and the sentencing proceedings. If either party desires the jury selection proceedings included as a part of the transcript, a supplemental designation of record shall be served on the adverse party and filed with the Supreme Court within 10 days after receipt of the automatic death sentence review papers. If either party desires that any of the exhibits be forwarded to the Supreme Court, a designation of such exhibits shall be served on the adverse party and filed with the Supreme Court within 10 days after receipt of the automatic death sentence review papers.

"The defendant may file within the prescribed time a notice of appeal from the trial court judgment to the Court of Appeals, pursuant to the applicable portions of ORS 138.040, 138.071, 138.081 and 138.185. In such event, further proceedings under automatic death sentence review shall be suspended until the appeal to the Court of Appeals, including review pursuant to ORS 2.520, has been exhausted.

"When suspension under the above paragraph has terminated in any manner which leaves the defendant still under sentence of death in the case at bar, the automatic death sentence review in the Supreme Court shall proceed. The transcript, briefs, exhibits, trial court file and any other part of the record in the Court of Appeals and in the Supreme Court, pursuant to ORS 2.520, shall be the record before the Supreme Court for the automatic death sentence review. Additional transcript

was circulated for comment. The proposed rule, recognizing a potential statutory ambiguity, permitted a convicted defendant who had been sentenced to death to invoke the appeal and review procedure provided by ORS 2.516, ORS chapter 138 and ORS 2.520.[3] If the defendant filed a notice of appeal to the Court of Appeals, further proceedings under automatic death sentence review were to be suspended until appellate and review procedure under ORS 2.516, ORS chapter 138 and ORS 2.520 had been exhausted. It is apparent that the proposed rule *assumed* that there were at least two alternative procedural routes to the Supreme Court under the statutes and that Supreme Court review was ensured in one way or another.

Prior to adoption of what is now found as Rule 2.15, Rules of Appellate Procedure, the Court of Appeals in *State v. Warren,* 46 Or App 253, 611 P2d 342 (May 21, 1980) held that appellate jurisdiction "in capital cases" is conferred expressly and exclusively upon the Supreme Court by ORS 163.116(5). On June 4, 1980, the Court of Appeals, on its own motion, dismissed this defendant's appeal to that court, citing its decision in *Warren.*

The Court of Appeals based its holding that it had no jurisdiction of the appeal on two lines of reasoning. The first was that ORS 2.516 is a "general" provision granting appellate jurisdiction to the Court of Appeals, while ORS 163.116(5) is a "particular" provision vesting the Supreme Court with jurisdiction

---

or briefs may be filed upon motion to the court subject to the provisions of Rules 6.35, 7.45 and 9.20.

"Automatic death sentence review, including preparation of the transcripts, briefs and other records therefore, shall be accorded priority over all other cases by all concerned."

[3] ORS 2.520 provides:

"Any party aggrieved by a decision of the Court of Appeals may petition the Supreme Court for review within 30 days after the date of the decision, in such manner as provided by rules of the Supreme Court."

of any appellate consideration of a conviction which results in a sentence of death. Under ORS 174.020 the particular provision is paramount, and the Court of Appeals held, therefore, that ORS 163.116(5) confers exclusive jurisdiction upon the Supreme Court.

The second line of reasoning is based upon construction of the Florida and Texas statutes, from which ORS 163.116(5) is apparently derived. The Court of Appeals noted that ORS 163.116(5) appeared to have been copied "almost verbatim" from statutes of Florida and Texas. Tex Crim Proc Code § 37.071(f) is:

> "(f) The judgment of conviction and sentence of death shall be subject to automatic review by the Court of Criminal Appeals within 60 days after certification by the sentencing court of the entire record unless time is extended an additional period not to exceed 30 days by the Court of Criminal Appeals for good cause shown. Such review by the Court of Criminal Appeals shall have priority over all other cases, and shall be heard in accordance with rules promulgated by the Court of Criminal Appeals."

Fla Stat Ann § 921.141(4) is:

> "The judgment of conviction and sentence of death shall be subject to automatic review by the Supreme Court of Florida within sixty (60) days after certification by the sentencing court of the entire record, unless the time is extended for an additional period not to exceed thirty (30) days by the Supreme Court for good cause shown. Such review by the Supreme Court shall have priority over all other cases and shall be heard in accordance with rules promulgated by the Supreme Court."

As the Court of Appeals recognized, the Texas statute is not of meaningful help, for that state has no intermediate court of appeals for criminal cases. The Court of Appeals found that in Florida, however, capital cases are "appealed" directly to the Supreme Court of Florida. 46 Or App at 256. Finding that the Florida scheme was substantially identical to the Oregon statutory framework, the Court of Appeals concluded that Florida's construction of its statutory framework should be followed and concluded that this state's

intermediate court of appeals should likewise be by-passed. It is not at all surprising that in Florida cases are "appealed" directly to the Florida Supreme Court, for the statutes so provided without regard to Fla Stat Ann § 921.141(4) quoted above. Fla Stat Ann § 924.08 provides:

"(1) Appeals from final judgments imposing the death penalty, passing upon the validity of a state or federal statute, or construing a controlling provision of the state or federal constitution shall be to the supreme court.

"(2) Appeals from final judgments in all other cases in which the circuit court has original jurisdiction and from all other final judgments except those which may be appealed directly to the supreme court or a circuit court shall be to the district court of appeal.

"(3) Appeals from final judgments in misdemeanor cases tried by county courts shall be to the circuit court."

Since appellate jurisdiction was already in the Supreme Court of Florida in death cases by reason of § 924.08, § 921.141(4) was not concerned with jurisdiction but with providing that the jurisdiction of the highest court would be invoked without regard to whether the defendant initiated an appeal.

The majority, in affirming the Court of Appeals, adopts the first line of reasoning of that court but does not rely upon the second line. The majority finds further reason for its result because of the time limits imposed for the "automatic review" described in ORS 163.116(5). The majority finally finds that had the drafters of Ballot Measure 8 intended two routes to Supreme Court review, they would have so stated.

With respect to that first line of reasoning, I submit that if the courts can give effect to all parts of the statutory law without leading to an absurd result, they should do so. Here we may do so and Rule 2.15 accomplishes just that. There is no reason to resort to ORS 174.020, which is no more than a rule of construction for resolving conflicts which cannot otherwise be resolved.

"In arriving at the legislative intent in the enactment of a statute, it should be read in connection with all statutes relating to the same subject matter, and effect should be given to every word, phrase, sentence and section of all such statutes, if possible." *State v. Popiel,* 216 Or 140, 145, 337 P2d 303 (1959).

In connection with the time limits described in ORS 163.116(5), I would note that the majority reads the statute as if it said:

"The judgment of conviction and sentence of death shall be automatically reviewed by the Supreme Court within 60 days * * *."

The statute, by its terms, is different. It provides that the judgment and sentence "shall be subject" to automatic review by this court within that time limit. Rule 2.15 does no violence to the time limit. The defendant who desires to forego his right to appeal will obtain automatic review within the time limits. The defendant who does appeal is given, in effect, an option to delay the onset of the 60 day period. If that defendant is successful in obtaining a reversal of his conviction, there is no occasion for the automatic review envisioned by ORS 163.116(5). If that defendant is unsuccessful, there will still be automatic review by this court within the fixed time limits as delayed only to allow for defendant's appeal.

As to the majority's final reason that the drafters would have expressly stated an intention to preserve ordinary appeal to such defendants had the drafters so intended, I can answer that they did just that. The drafters of this legislation must have been aware of the right to appeal given to any convicted criminal defendant which existed at the time Ballot Measure 8 was proposed. Had they intended to vitiate that right, it would have been a simple matter to say so. Had they merely overlooked abolishing that right, they could have brought it to the attention of the legislature in the ensuing session of 1979. Neither the drafters nor the legislature, however, chose to repeal that preexisting right of appeal. The majority finds, without pointing to any legislative history for support, that the appeal "as a matter of right" given by ORS

138.020 to every convicted criminal defendant is taken from him by the *silence* of the drafters of Ballot Measure 8.

The statute provides for an automatic "review" rather than an automatic "appeal"; nevertheless, the majority states that the statute confers upon this court exclusive "appellate" jurisdiction. I hope that the majority does not mean to imply that "review" is no broader than "appeal." At any rate, for the purposes of this case, the majority has not seen fit to explore any possible difference in meaning, and I leave that for another day. It does seem, however, that had the sponsors of the legislation intended to provide for "appeal" in the traditional sense, they would have used language akin to that of former ORS 138.410, quoted at the outset of this opinion. It would have been simple to have revived that statute with the desired change in time limits. Since the sponsors chose a word other than "appeal" I would certainly not assume they meant "review" to have exactly the same meaning without more attention to that matter than has been displayed thus far in this case.

As the majority notes, defendant makes passing reference in his petition for review to an equal protection argument. He cites neither the Oregon Constitution nor the United States Constitution by article and section. He does not direct us to the precise constitutional text upon which he relies or to any decisions of the United States Supreme Court or this court interpreting the respective constitutional texts. His whole argument in this respect follows:

> "If in conformance with the purpose of subsection (5) the appeals would be expedited in the Court of Appeals, it would allow a maximum number of jurists to review death penalty cases. This in turn would provide equal protection under law for defendants appealing their convictions."

That argument does not even invoke the words in which Or Const. Art I, § 20 is couched. It seems to be an extremely narrow claim that somehow the defendant is denied equal protection under the Fourteenth

Amendment to the United States Constitution because less than the maximum number of appellate judges of this state will pass on his contentions. I do not understand the argument well enough to answer it. I would reserve until another day the question of whether denial of appeal to the Court of Appeals for a defendant sentenced to death offends either Or Const. Art I, § 20, or the Fourteenth Amendment. I do not mean to imply, however, whether I believe or do not believe there is a violation of this defendant's rights under either constitution on some basis other than the number of appellate judges who will hear the claims of such a defendant.

I would reverse and remand to the Court of Appeals to consider the appeal on its merits.

Linde, J., joins in this dissent.