Argued and submitted July 13, affirmed and remanded for sentencing October 26, petition for rehearing denied November 23, 1982

STATE OF OREGON,
*Respondent on review,*

*v.*

MELVIN RAY BURROW,
*Petitioner on review.*

(TC C81-02-30968, CA A21176, SC 28506)

653 P2d 226

Richard L. Lonergan, Portland, argued the cause for petitioner on review. With him on the brief were Howard R. and Clint A. Lonergan, Portland.

Thomas H. Denney, Assistant Attorney General, Salem, argued cause for respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Lent, Chief Justice, and Linde, Peterson, Tanzer, and Campbell, Justices, and Carson.* *

PETERSON, J.

Linde, J., dissenting opinion.

* * Justice Pro Tempore at time of argument.

## PETERSON, J.

Defendant participated with three others in an armed robbery of a man and a woman in a motel room, in the course of which the man was injured and the woman was fatally stabbed. At his jury trial on charges of felony murder, attempted murder, and two counts of first degree robbery, defendant testified that after entering the motel room with his accomplices he withdrew from the planned robbery before any criminal act occurred and that he did not know that one of the other participants had a knife.

Defendant was convicted of the two robberies and of felony murder and acquitted of attempted murder. After unsuccessfully appealing his convictions on several grounds,[1] defendant petitioned this court to review his claim that he was unconstitutionally required to shoulder the burden of proving an affirmative defense to the charge of felony murder.

The felony murder statute then provided:

"(1) * * * [C]riminal homicide constitutes murder when:

"* * * * *.

"(b) It is committed by a person, acting either alone or with one or more persons, who commits or attempts to commit arson in the first degree, burglary in the first degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree or sodomy in the first degree and in the course of and in furtherance of the crime he is committing or attempting to commit, or the immediate flight therefrom, he, or another participant if there be any, causes the death of a person other than one of the participants; * * *

"* * * * *.

"(3) It is an affirmative defense to a charge of violating paragraph (b) * * * of subsection (1) of this section that the defendant:

"(a) Was not the only participant in the underlying crime; and

---

[1] The state conceded error in defendant's sentence, and the Court of Appeals remanded the case for resentencing. 55 Or App 1030, 639 P2d 1318 (1982).

"(b) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid in the commission thereof; and

"(c) Was not armed with a dangerous or deadly weapon; and

"(d) Had no reasonable ground to believe that any other participant was armed with a dangerous or deadly weapon; and

"(e) · Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death * * *."

ORS 163.115 (1979) (amended 1981).[2]

The trial court instructed the jury that "[i]t is a defense to this charge if the defendant proves each of the following," continuing by reading the jury the five items listed in the foregoing paragraphs (a) through (e). The court further stated:

"This defense is an affirmative defense which must be proved by the defendant. The defense must be proved by a preponderance of the evidence, that is, by that amount of evidence which, when weighed with that opposed to it, has more convincing force and the great[3] probability of truth."

Defendant excepted to this instruction on the grounds, first, that it shifted the burden of proof from the state to the defendant, and second, that the "reasonable grounds" test of paragraphs (d) and (e) make stupidity a crime.[4]

The court's instruction that the defendant· must prove the items constituting the "affirmative defense" follows ORS 161.055(3), which states that when a defense is so labeled in the Criminal Code of 1971, "the defendant has the burden of proving the defense by a preponderance of the evidence." The drafters of the criminal code allocated the burden of proof in this way before recent judicial

---

[2] This opinion contains frequent references to ORS 163.115(3), the felony murder affirmative defense statute then in effect. It was amended in 1981, Or Laws 1981, ch 873, § 5. What was ORS 163.115(3) is now ORS 163.115(2).

[3] So reported in the transcript. Possibly the judge said "greater"; there was no objection to what he said.

[4] For the first exception, defendant invoked "due process under the State and federal constitutions." He cited no legal basis at trial for the second exception.

decisions that limited the extent to which due process allows lawmakers to shift the burden of proof to defendants in criminal cases. We therefore examine whether the provisions of ORS 163.115 and ORS 161.055 are compatible with the requirement that guilt be proved beyond a reasonable doubt as a matter of federal constitutional law.[5]

The decision in this case involves the application of the Fourteenth Amendment, as interpreted in recent decisions. The United States Supreme Court has held proof of guilt beyond a reasonable doubt to be required by Fourteenth Amendment due process since *In re Winship,* 397 US 358, 361-64, 90 S Ct 1068, 25 L Ed 2d 368 (1970). Exactly what must be proved beyond a reasonable doubt has been phrased in various ways. *Winship,* 397 US at 362, quoted two earlier cases which said that what must be proved beyond a reasonable doubt in a criminal case is "guilt." In *Winship,* 397 US at 362, quoting from *Davis v. United States,* 160 US 469, 484, 16 S Ct 353, 40 L Ed 499, 507 (1895), and later in *Mullaney v. Wilbur,* 421 US 684, 685, 95 S Ct 1881, 44 L Ed 2d 508 (1975), the Court stated the due process requirement to be that the prosecution prove beyond a reasonable doubt "every fact necessary to constitute the crime" charged. The *Winship* phrasing was quoted in *Patterson v. New York,* 432 US 197, 204, 97 S Ct 2319, 53 L Ed 2d 281 (1977). The same opinion said that "Mullaney surely held that a State must prove every ingredient of an offense beyond a reasonable doubt * * *," 432 US at 215. In a later case, the court has phrased the *Winship* principle as requiring proof "beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia,* 443 US 307, 316, 99 S Ct 2781, 61 L Ed 2d 560 (1979).

*Mullaney* and *Patterson* are the two principal cases upon which the outcome of this appeal turns. Both were

[5] Defendant's objection at trial referred generally to "due process of law" and to "the due process clause of the state and federal constitutions" without further identification. In his brief, he cited Article I, section 10, of the Oregon Constitution. That section provides that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation." Unlike the Fifth and Fourteenth Amendments and similar "due process" clauses in state constitutions, Article I, section 10, does not refer to official deprivations of "liberty" nor to "due process of law." Rather, it provides an affirmative claim upon the state to provide a legal "remedy" for an "injury done." It is not relevant to this case.

murder cases. Both concerned the mental state of a defendant which, if established, would make a homicide either murder or manslaughter. *Mullaney* was decided in 1975 under a Maine murder statute which provided: "Whoever unlawfully kills a human being with malice aforethought, either express or implied, is guilty of murder * * *." Me Rev Stat Ann, tit 17, § 2651 (1964). The jury was instructed that if the prosecution established that the homicide was both intentional and unlawful, "malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation." 421 US at 686, 691-92. The Supreme Court observed that "the fact at issue—the presence or absence of the heat of passion on sudden provocation—has been, almost from the inception of the common law of homicide, the single most important factor in determining the degree of culpability attaching to an unlawful homicide. * * * [T]he clear trend has been toward requiring the prosecution to bear the ultimate burden of proving this fact." 421 US at 696. The court held that the presumption had the effect of relieving the state of the burden to prove malice aforethought. The presumption forced the defendant to disprove malice aforethought in his heat of passion affirmative defense. The court struck down Maine's affirmative defense of provocation on the ground that requiring the defendant to prove provocation was inconsistent with the teaching of *Winship* that the state prove "every fact necessary to constitute the crime with which he is charged." *Mullaney,* 421 US at 685, 704; *Winship,* 397 US at 364.

The *Mullaney* decision was unanimous. In the minds of many it made unconstitutional virtually all criminal law affirmative defenses, most certainly (as the dissent would hold) those affirmative defenses affecting guilt. Many courts so read and applied the case. For example, a Maryland appellate court wrote:

"* * * *[Mullaney]* dooms as unconstitutional any procedural device which 1) imposes upon a defendant a burden of proving, by any standard, his innocence as to any element of a crime or 2) relieves the State of its burden of ultimate persuasion beyond a reasonable doubt as to any issue fairly in the case." Evans v. State, 28 Md App 640, 654, 349 A2d 300, 312 (1975).

Some commentators opined that *Mullaney,* carried to its logical conclusion, would forbid all affirmative defenses.[6]

The dissenting opinion is consistent with *Mullaney.* But it is not consistent with *Patterson,* decided two years later. In *Patterson,* which concerned an essentially indistinguishable legal issue, the Supreme Court reached a contrary result. *Patterson* denuded *Mullaney* without overruling it.

*Patterson* involved a murder conviction under a New York murder statute that had two elements: (1) "intent to cause the death of another person"; and (2) "caus[ing] the death of such person or of a third person." NY Penal Law 125.25 (McKinney 1975). Malice aforethought was not an element of the crime. Under New York law, if the defendant could prove that he was acting "under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse * * *" the crime would be reduced to manslaughter. The Supreme Court held that the imposition of this burden upon the defendant did not violate the federal Due Process Clause.

The court began its analysis with the statement that the creation of affirmative defenses is normally within the power of the state "unless * * * 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' * * *" 432 US at 201-02 (quoting *Speiser v. Randall,* 357 US 513, 523 (1958)). The court made it clear that *Mullaney* is to be limited to its facts, and specifically rejected the theory advanced in the dissenting opinion in apparent anticipation of the situation presented here.

> "There is some language in *Mullaney* that has been understood as perhaps construing the Due Process Clause to require the prosecution to prove beyond a reasonable doubt any fact affecting 'the degree of criminal culpability.' [citing law review articles]. It is said that such a rule would deprive legislatures of any discretion whatsoever in allocating the burden of proof, the practical effect of which

---

[6] *See The Supreme Court, 1976 Term,* 91 Harv L Rev 1, 97 (1977). *See also* Comment, *Affirmative Defenses After* Mullaney v. Wilbur: *New York's Extreme Emotional Disturbance,* 43 Brooklyn L Rev 171 (1976); Note, *The Constitutionality of Affirmative Defenses After* Patterson v. New York, 78 Colum L Rev 655, 656, 659, 669 (1978); Note, *Affirmative Defenses and Due Process: The Constitutionality of Placing a Burden of Persuasion on a Criminal Defendant,* 64 Geo L J 871 (1976).

might be to undermine legislative reform of our criminal justice system. * * * *Carried to its logical extreme, such a reading of* Mullaney *might also, for example, discourage Congress from enacting pending legislation to change the felony-murder rule by permitting the accused to prove by a preponderance of the evidence the affirmative defense that the homicide committed was neither a necessary nor a reasonably foreseeable consequence of the underlying felony.* See Senate bill S 1, 94th Cong, 1st Sess, 118 (1975). The Court did not intend *Mullaney* to have such far-reaching effect." *Patterson v. New York,* 432 US 197, 214 n 15, 97 S Ct 2319, 53 L Ed 2d 281 (1977). (Emphasis added.)

The *Patterson* court adhered to its earlier decisions in *Rivera v. Delaware,* 429 US 877, 97 S Ct 226, 50 L Ed 2d 160 (1976) (court, for want of a substantial federal question, dismissed appeal in a case involving a Delaware statute which required a defendant raising an insanity defense to prove mental illness or defect by a preponderance of the evidence), and *Leland v. Oregon,* 343 US 790, 72 S Ct 1002, 96 L Ed 1302 (1952) (Oregon statute which placed burden of proving insanity beyond a reasonable doubt on defendant held constitutional), saying:

"We are unwilling to reconsider *Leland* and *Rivera.* But even if we were to hold that a State must prove sanity to convict once that fact is put in issue, it would not necessarily follow that a State must prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment. Here, in revising its criminal code, New York provided the affirmative defense of extreme emotional disturbance, a substantially expanded version of the older heat-of-passion concept; but it was willing to do so only if the facts making out the defense were established by the defendant with sufficient certainty. The State was itself unwilling to undertake to establish the absence of those facts beyond a reasonable doubt, perhaps fearing that proof would be too difficult and that too many persons deserving treatment as murderers would escape that punishment if the evidence need merely raise a reasonable doubt about the defendant's emotional state. It has been said that the new criminal code of New York contains some 25 affirmative defenses which exculpate or mitigate but which must be established by the defendant to be

operative. The Due Process Clause, as we see it, does not put New York to the choice of abandoning those defenses or undertaking to disprove their existence in order to convict of a crime which otherwise is within its constitutional powers to sanction by substantial punishment." *Patterson v. New York, supra,* 432 US at 207-08.[7]

■ As stated, there may be reason for confusion in reconciling *Mullaney* and *Patterson.* But there is no reason for confusion as to the ultimate result of those decisions: Unless an affirmative defense has the effect of transferring to the defendant the burden of disproving an element of the prosecution's case, the affirmative defense will be permitted. The state need not establish "every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment. * * * The Due Process Clause * * * does not put [a state] to the choice of abandoning those defenses or undertaking to disprove their existence in order to convict of a crime which otherwise is within its constitutional powers to sanction by substantial punishment." *Patterson, supra,* 432 US at 207-08.[8]

---

[7] *Patterson* generated immediate comment. Some commentators opined that because *Patterson* was indistinguishable from *Mullaney,* the court should have reversed per curiam, citing *Mullaney.* Others, agreeing that *Patterson* was indistinguishable from *Mullaney,* asserted that the court should have been honest about it, and overruled *Mullaney. See* Allen, *The Restoration of In Re Winship: A Comment on Burdens of Persuasion in Criminal Cases After* Patterson v. New York, 76 Mich L Rev 30, 35 n 4, 54 (1977).

The point is that *Patterson* has largely limited *Mullaney.*

"The Court is unmistakably disenchanted with *Mullaney v. Wilbur* and quite possibly means to limit to egregious cases the involvement of federal courts in allocating burdens under state law." *Id.* at 53.

[8] In *State v. Stilling,* 285 Or 293, 297-98, 590 P2d 1223 (1979), we held that instructions on presumptions which suggest "that the state does not have to carry the burden of proof on the intent element" are impermissible under *Mullaney.*

Our decision in *State v. Stockett,* 278 Or 637, 644, 565 P2d 739 (1977), involved the constitutionality of ORS 161.305, which imposed upon a defendant the burden of proving diminished or partial responsibility under ORS 161.295(1). It was rendered four days after *Patterson* was decided. We said that "as in *Mullaney,* the state, through ORS 161.305, has attempted to shift the burden of proof on this issue to the defendant. * * * Therefore, we hold that ORS 161.305 is unconstitutional insofar as it places the burden of proving partial responsibilty or diminished intent on the defendant." 278 Or at 637.

Rehearing was not requested. We express no opinion as to the effect of the *Patterson* holding on our decision in *Stockett.*

The purpose of creating the ORS 163.115(3) affirmative defense was to lessen the harshness of the felony murder doctrine by creating an affirmative defense which, if proved, would exculpate the defendant. The legislature had a choice: It could have provided for affirmative defenses as to which the defendant had the burden of proof (such as in the New York Revised Penal Law § 25.00, upon which ORS 161.055 is based) or it could have provided (as recommended by the Model Penal Code) that once the defendant has introduced some evidence of the defense, the prosecution must then persuade the factfinder beyond a reasonable doubt that the defense does not exist.[9] The legislature opted to impose the burden of proof upon the defendant. The preference of this writer or any other member of this court as to the better procedure is irrelevant. *Patterson* states that the decision is for the legislature, subject to the remaining constitutional constraints imposed by *Mullaney*.[10] We therefore examine the statutes and the trial court instructions in light of *Mullaney*, as limited by *Patterson*.

The defendant was charged with four crimes: robbery of Johnson, robbery of Kleinberg, attempted murder of Johnson, and felony murder of Kleinberg. The uncontradicted evidence was that the defendant and three others planned the robbery.

---

[9] *See* Model Penal Code, Proposed Final Draft No. 1, § 1.12(2) (1961); W. LaFave & A. Scott, Criminal Law § 8, at 46-51 (1972); C. McCormick, Handbook of the Law of Evidence § 341, at 800-02 (2d ed 1972).

[10] The dissenters are apprehensive that this holding may lead the legislature to define crimes in terms requiring but a "modicum of incriminating evidence," thrusting upon the defendant the burden of proving that he or she did not commit a crime. 293 Or at 714. Since *Patterson* was decided in 1977, we have not seen that situation arise. On the contrary, this very case illustrates precisely the opposite. Before the enactment of our present felony murder statute, no affirmative defenses were available. Before 1971, ORS 163.010(1) provided:

"(1) Any person who purposely, and of deliberate and premeditated malice, or in the commission of or attempt to commit rape, arson, robbery or burglary, kills another, is guilty of murder in the first degree."

The legislative creation of a felony murder affirmative defense has operated to ameliorate the harshness of the previous felony murder doctrine.

If the nonexistent parade of horribles described in the dissenting opinion becomes existent by reason of legislative manipulation of elements of the crime, courts will be equal to the task of protecting the constitutional rights of persons charged with crimes.

Kleinberg was stabbed by one of the defendant's associates, Richard "Tiny" Roberts, and later died. Property was taken. The defendant's principal defenses were that he withdrew before any criminal act occurred and that he did not know that Roberts was armed with a knife. There was evidence, however, that the defendant assaulted Johnson during the time that Roberts was assaulting Kleinberg and that the defendant knew that Roberts was armed with a knife.

The Kleinberg robbery indictment charged defendant and another participant as follows:

"* * * [D]efendants * * * did unlawfully and knowingly use physical force upon Patricia Diane Kleinberg, by stabbing Patricia Diane Kleinberg, and did use a dangerous weapon, to-wit: a knife, while in the course of attempting to commit theft of property, to-wit: lawful currency of the United States of America, with the intent of preventing resistance to the said defendants' taking of the said property, contrary to the Statutes in such cases made and provided, * * *."

The first degree robbery statute under which defendant was charged is ORS 164.415. It provides:

"(1) A person commits the crime of robbery in the first degree if he violates ORS 164.395 [the third degree robbery statute] and he:

"(a) Is armed with a deadly weapon; or

"(b) Uses or attempts to use a dangerous weapon; or

"(c) Causes or attempts to cause serious physical injury to any person."

The felony murder indictment alleged that the defendants

"* * * [D]id unlawfully and knowingly commit the crime of Robbery in the First Degree and in the course of and in furtherance of the said crime which the said defendants were committing, *another participant in the said crime, Richard D. Roberts,* also known as Tiny *did cause the death of another human being,* to-wit: Patricia Diane Kleinberg, not a participant in the crime, *by stabbing Patricia Diane Kleinberg,* * * *." (Emphasis added.)

Defendant was found guilty of both crimes.

ORS 161.150 makes one guilty of a crime "if it is committed by his own conduct or by the conduct of another for which he is criminally liable, or both." ORS 161.155(2)(b) makes a person "criminally liable for the conduct of another person constituting a crime if * * * with the intent to promote or facilitate the commission of the crime he * * * [a]ids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime * * *." It is clear that the defendant's conviction on both the Kleinberg robbery charge and the Kleinberg felony murder charge arose from his participation as an accomplice in the robbery.

On the Kleinberg robbery charge the trial court instructed the jury:

"Count IV again is a charge of Robbery in the First degree, and I'll go through the material elements which must be proved beyond a reasonable doubt:

"* * * * *

"Four, that the defendant *or his accomplices* were armed with a dangerous weapon, to wit: a knife.

"* * * * *

"Now, let's give you some further definitions about participating.

"A person concerned in the commission of a crime may be convicted of such crime if he directly commits the act constituting the crime, or aids and abets or attempts to aid or abet another in its commission even though not personally present at the time and place of the commission of the crime." (Emphasis added.)

On the felony murder charge, the jury was instructed on the statutory elements contained in ORS 163.115(1)(b), which are quoted earlier in this opinion. Relative to the defendant's affirmative defense, the jury was instructed as follows:

"Now, the defendant has raised an affirmative defense of the crime of Felony Murder while in the commission of the crime of Felony Murder.

"It is a defense to this charge if the defendant proves each of the following:

"* * * * *

"Three, he was not armed with a dangerous or deadly weapon; * * *."

 The defendant claims that ORS 163.115(3) is unconstitutional in a felony murder case in which the underlying crime is first degree robbery because the affirmative defense of ORS 163.115(3)(c) ("that the defendant was not armed with a dangerous weapon") effectively required him to disprove an element of the underlying robbery (a person commits robbery if, in the course of robbing another he "is armed with a deadly weapon"). The *Mullaney* rule is that the state must prove every ingredient of an offense beyond a reasonable doubt and it may not, by a presumption or otherwise, shift to the defendant the burden of disproving an element of the crime. We compare the instructions to see whether the *Mullaney* rule was violated.

The instructions concerning use of a deadly weapon are best analyzed by putting them side by side.

| Robbery Instructions | Felony Murder Instructions |
|---|---|
| "* * * I'll go through the material elements which must be proved beyond a reasonable doubt: * * * Four, that the defendant or his accomplices were armed with a dangerous weapon, to-wit: a knife * * *." (ORS 164.415(1)(a)) | "It is a defense to this [felony murder] charge if the defendant proves each of the following: * * * Three, he was not armed with a dangerous or deadly weapon * * *." (ORS 163.115(2)(c)) |

The instructions, though similar, are not inconsistent. The instructions on the robbery charge required the state to prove that "the defendant *or his accomplices* were armed with a dangerous weapon." (Emphasis added.) The felony murder instruction required the defendant to prove that he "was not armed with a dangerous weapon." If the conduct of the defendant alone is considered under the instructions, they are plainly inconsistent. They are not, however, when considered in their entirety. It was not necessary for the defendant to be armed to be guilty of robbery. The jury found the defendant guilty, not because he was armed with a dangerous weapon, but because he was an accomplice to Roberts, who was armed.[11] The

---

[11] The defendant could also have been found guilty on two other bases—the use or attempted use of a dangerous weapon by an accomplice, ORS 164.415(1)(b)

instructions did not have the effect of transferring an element of the underlying crime—being armed with a dangerous weapon—from the state to the defendant.

Concededly, when the relevant statutes, ORS 163.115(3)(c) and ORS 164.415(1)(a), are compared, an apparent *Mullaney* problem arises. But the problem is only an apparent one, for other statutes are involved and must be considered in making a *Mullaney* analysis. In cases in which the defendant's robbery criminal liability derives from his status as an accomplice under ORS 161.150-161.155, the role of those statutes must be considered. Almost every crime described in the criminal code includes by implication the criminal responsibility language of ORS 161.150-.155, and it would be error for us, in making a *Mullaney* analysis, to fail to consider the defendant's liability as an accomplice. Therefore, in examining the language of ORS 164.415(1)(a), we must (as did the trial judge in his instructions) add the words "or his accomplice." With that addition, for reasons already stated, the apparent *Mullaney* problem disappears.

We do not commend the giving of instructions under ORS 163.115(3) when there is no dispute as to the issue. The trial court, in giving the affirmative defense instructions under ORS 163.115(3), should have mentioned only those subsections which were in issue. Even though the affirmative defense instruction under ORS 163.115(3)(c) should not have been given, we are convinced, beyond any doubt, that the giving of the instructions in no way prejudiced the defendant.

The defendant also claims that the trial court erred in instructing the jury, on the felony murder affirmative defense, that it is a defense to the charge "if the defendant proves each of the following:

"* * * * *

"Four, he had no reasonable ground to believe that any other participant was armed with a dangerous or deadly weapon; or

---

or the attempted or actual causing of serious physical injury to Kleinberg by an accomplice, ORS 164.415(1)(c).

"Five, he had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in the death of a person."

The defendant claims that it was error to instruct the jury in terms of what the defendant had reason to believe, rather than in terms of his actual knowledge. He excepted to the instructions as follows:

"I except to instructions which involve that the defendant must have reasonable grounds to believe that. one of the participants was not armed with a deadly weapon or he must have a reasonable belief that it may not end in death, and I forget the rest of the instruction —

"MR. GARDNER: Four and five of the affirmative defense of felony murder.

"MR. LONERGAN: Yes; on the grounds that this would make stupidity a crime, that whether he was acting reasonable or not is not appropriate in this case."

The defendant claims that defining a crime in terms of what a reasonable person would believe is improper.[12] In *State v. Aschenbrenner,* 171 Or 664, 138 P2d 911 (1943), the defendants were charged under a statute which described no culpable mental state and provided in relevant part that "[a]ny person who shall take up any estray * * * shall be deemed guilty of larceny * * *." The jury was instructed that the defendants' criminal liability turned on whether "a man of ordinary intelligence and observation" in defendants' place would believe that estray animals were in their flock. The defendants appealed their convictions claiming that the instruction was erroneous because it permitted conviction on evidence short of evidence of actual knowledge. This court reversed, saying:

"* * * It seldom happens that direct evidence can be produced that the accused had actual knowledge of a fact. And in the absence of direct evidence knowledge may be

---

[12] He cites *State v. Redeman,* 9 Or App 329, 337, 496 P2d 230 (1972), a decision in which the Court of Appeals relied upon *State v. Aschenbrenner,* 171 Or 664, 671, 138 P2d 911 (1943). *Compare State v. Thomas,* 13 Or App 164, 170, 509 P2d 446 (1973) (holding that theft by receiving statute requires that defendant have actual knowledge that the property is stolen) with *State v. Gulbrandson,* 2 Or App 511, 514, 470 P2d 160 (1970) (holding that an indictment which charged that the defendant had "reason to believe" a vehicle was stolen was not unconstitutionally vague). *See also* W. LaFave and A. Scott, Criminal Law § 93, at 686 (1972); C. Torcia, 4 Wharton's Criminal Law § 455, 5-11 (1981).

inferred from circumstances. The issue, however, was whether the defendants had knowledge that estray sheep were in the flock, not whether some other person would or could have obtained that knowledge under the circumstances disclosed by the evidence. It might have appeared to the jury that the defendants, or some of them, did not possess the intelligence or observation of an ordinary man, or that in a given instance they, or some of them, acted unwisely, unreasonably, imprudently or carelessly, but not with criminal intent. The instruction complained of was not only erroneous, but highly prejudicial to the defendants' rights." 171 Or at 674.

■ *Aschenbrenner* is distinguishable. There the statute was silent on the mental state required for conviction. This court construed the statute to require conduct based upon knowledge, saying that "[although the] word 'knowingly' is not used in the statute, * * * we believe that it is implied * * *." 171 Or at 668. *Aschenbrenner* did not hold that it is constitutionally improper for a legislature to define a crime or an affirmative defense in terms of an accused's reasonable grounds for belief. We see no impropriety in establishing an affirmative defense in terms of an objective standard—the defendant's reasonable grounds for belief. The defendant has not shown any reason why the statute is unconstitutional, and we are unable to discern any such reason.

Affirmed. Remanded to trial court for sentencing.[13]

Linde, J., filed a dissenting opinion.

**LINDE, J.,** dissenting.

When Patterson's case was before the New York Court of Appeals, Chief Judge Breitel cautioned in a concurring opinion:

"It would be an abuse of affirmative defenses, as it would be of presumptions.in the criminal law, if the purpose or effect were to unhinge the procedural presumption of innocence which historically and constitutionally shields one charged with crime. Indeed, a by-product of such abuse

---

[13] See note 1 *supra.*

might well be also to undermine the privilege against self-incrimination by in effect forcing a defendant in a criminal action to testify in his own behalf."

*People v. Patterson*, 39 NY2d 288, 305, 347 NE2d 898, 909 (1976), quoted in *Patterson v. New York*, 432 US 197, 211 n. 13, 97 S Ct 2319, 53 LEd2d 281, 291 n. 13 (1977). In the United States Supreme Court, Justice Powell, joined by Justices Brennan and Marshall, began his dissent with the warning that the Court "surrenders to the legislative branch a significant part of its responsibility to protect the presumption of innocence." *Patterson*, 432 US at 216. Today's decision demonstrates the cogency of those warnings when a state court does not use sensitive and critical judgment in applying *Patterson* nor exercise its own responsibility for maintaining the state's historic burden of proof in criminal prosecutions.

As far as fourteenth amendment due process goes, the Supreme Court's opinion in *Patterson* may permit the majority's reading in this case, though it does not compel it. *Patterson*, like *Mullaney*[1] before it, dealt only with the mitigating effect of emotional disturbance on the guilt of an intentional killer, and it held that because New York law made intent alone sufficient for the crime of murder, the state could leave it to the defendant to show the mental condition that would reduce his guilt to manslaughter. It is important to note the two characteristics of the issue decided in *Patterson*. First, it dealt only with proof of a defendant's state of mind at the time he intentionally committed an unlawful homicide as a factor in determining the extent of his culpability. This focus on defendant's mental condition is emphasized by the lengthy attention the Court gave to its own prior decisions on proof of the defense of insanity, contrasting *Davis v. United States*, 160 US 469, 16 S Ct 353, 40 L Ed 499 (1895) (placing the burden on the prosecution to prove sanity) with *Leland v. Oregon*, 343 US 790, 72 S Ct 1002, 96 L Ed 1302 (1952) (holding that due process did not foreclose placing this burden on the defendant).[2] 432 US at 202-04, 206. Second,

---

[1] *Mullaney v. Wilbur*, 421 US 684, 95 S Ct 1881, 44 LEd2d 508 (1975).

[2] The Court also cited *Rivera v. Delaware*, 429 US 877, 97 S Ct 226, 50 LEd2d 160 (1976) as reaffirming *Leland*.

the *Patterson* opinion treated the issue as one concerning mitigation and the appropriate degree of punishment.

> "[E]ven if we were to hold that a State must prove sanity to convict once that fact is put in issue, it would not necessarily follow that a State must prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment."

432 US at 207.[3] In view of these two characteristics, that *Patterson* concerned degrees of a defendant's accountability for an intentional homicide and that defendant's mental state was seen as a mitigating fact, *Patterson* is far from holding that legislatures are wholly free to transfer burdens to prove facts on which a defendant's guilt will actually depend by manipulating "elements" of the statutory definition of the crime. Yet this is exactly how the majority opinion in the present case chooses to apply *Patterson.*

The majority's reading is invited by the shifting vocabulary of the United States Supreme Court's statements that due process requires the prosecution to prove beyond a reasonable doubt the defendant's "guilt,"[4] of "every fact necessary to constitute the crime charged,"[5] or "every ingredient of an offense,"[6] or "the existence of every element of the offense."[7] "Every fact" connotes the

---

[3] The Court repeated the point:

"If the State nevertheless chooses to recognize a factor that mitigates the degree of criminality or punishment, we think the State may assure itself that the fact has been established with reasonable certainty. To recognize at all a mitigating circumstance does not require the State to prove its nonexistence in each case in which the fact is put in issue, if in its judgment this would be too cumbersome, too expensive, and too inaccurate." (footnote omitted).

*Patterson, supra,* 432 US at 209. This quotation was accompanied by a footnote reference to the American Law Institute's Model Penal Code, which recommends placing the burden on the state to disprove so-called "affirmative defenses" of the kind here at issue, once the defendant has come forward with some evidence of the defense. ALI Model Penal Code § 1.13, Comment, p. 113 (Tent. Draft No. 4, 1955).

[4] *In re Winship,* 397 US 358, 362, 90 S Ct 1068, 25 LEd2d 368 (1970).

[5] *Mullaney, supra,* n. 1, 421 US at 685.

[6] *Patterson, supra,* 432 US at 215.

[7] *Jackson v. Virginia,* 443 US 307, 316, 99 S Ct 2781, 61 LEd2d 560, 571 (1979).

occurrence of those events and circumstances, at the time of the alleged act and its consequences, that either do or do not add up to guilty conduct at that time. Proof of "guilt" similarly conveys the thought that the state must prove all events and circumstances on which defendant's guilt depends. In contrast, the phrases "every ingredient" or "every element" in the "definition" of the offense focus attention on legal analysis rather than facts and thereby open the door to legislative manipulation.

Concern about this possibility was at the core of Justice Powell's opinion for three dissenters:

> "The test the Court today establishes allows a legislature to shift, virtually at will, the burden of persuasion with respect to any factor in a criminal case, so long as it is careful not to mention the nonexistence of that factor in the statutory language that defines the crime. The sole requirement is that any references to the factor be confined to those sections that provide for an affirmative defense."

432 US at 223 (footnote omitted). The majority acknowledged this risk and expressed confidence that it would not happen. 432 US at 211 n. 12.

The question, therefore, is whether the affirmative defense to felony murder stated in ORS 163.115(3) (1979) merely deals with mitigation "affecting the degree of culpability or the severity of the punishment" or whether, in the words which the Court quoted from Judge Breitel, above, its effect is "to unhinge the procedural presumption of innocence" and "to undermine the privilege against self-incrimination by in effect forcing a defendant in a criminal action to testify in his own behalf."

ORS 163.115(3) (1979) is not concerned with gradations of culpability and mitigation of punishment.[8] Nor is

---

[8] ORS 163.115(3) (1979) (amended 1981):

"(3) It is an affirmative defense to a charge of violating paragraph (b) or (c) of subsection (1) of this section that the defendant:

"(a) Was not the only participant in the underlying crime; and

"(b) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid in the commission thereof; and

"(c) Was not armed with a dangerous or deadly weapon; and

it confined to the issue of the mental state with which the defendant committed an intentional act. Rather, it deals with factual events of a crime leading to the death of a nonparticipant, with the circumstances under which a participant either is or is not guilty of murder. The first fact is whether the defendant was or was not the only participant in the crime. The second fact is whether he did or did not commit, verbally counsel, cause, or aid in the homicidal act. The third fact is whether defendant was or was not armed with a dangerous or deadly weapon. The fourth and fifth facts are whether he had "reasonable grounds to believe" that another participant was armed and intended to endanger someone's life. In sum, if a death occurs in the course of a listed crime, an unarmed participant who neither counseled nor aided in the fatal act, or had reason to expect that another participant would commit it, has not committed a murder. But the statute would force a defendant to prove these facts. This both shifts the procedural burdens in the case and in effect forces the defendant to testify concerning the events of the "underlying crime" alleged by the prosecution.

The statute lists the facts negating felony murder cumulatively. In other words, the legislature has prescribed that one who participates in the fatal crime is a murderer if, but only if, he committed, or counseled, or assisted in the fatal act, or was armed, or had reason to believe that another participant was armed or intended to risk anyone's death. If the jury believes one of these facts, defendant committed felony murder, otherwise not. Only one of the items listed in paragraphs (a) to (e) is a prerequisite to defendant's guilt of murder, not all of them. But in my view, as long as at least one of the facts must have occurred to make the defendant a murderer, the state cannot constitutionally relieve itself of the burden to prove that fact.

Of course it is verbally possible to redefine any crime in broad, general terms with exculpatory exceptions,

---

"(d) Had no reasonable ground to believe that any other participant was armed with a dangerous or deadly weapon; and

"(e) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death."

and then to argue that an individual is guilty of the broadly defined crime unless he proves the exculpatory circumstances. This is the kind of textual manipulation that is cautioned against by the Supreme Court and Judge Breitel in *Patterson*. But the statute's words do not disguise the substance of the legislative determination that a criminal is a murderer only if he either did or had reason to believe one of the things listed in ORS 163.115(3) (1979) and there assigned to him to disprove. It is what he did or should have known at the time of the crime that made his crime murder or not under the statute. The shift of the burden of proving these facts is very different from the mitigation of the degree of culpability for intentional murder by reason of a defendant's emotional state which was at issue in *Patterson*. Whatever words the majority may quote from the majority opinion in *Patterson,* its holding is not compelled by the holding in that case.

The glaring flaw in a premise that the state's burden of proof extends only to those "elements" which it chooses to describe as such in defining a crime is that such a constitutional test provides no terminal point for the potential rearrangement of the burden of proof in criminal prosecutions. Whenever the state recognizes that some fact or circumstance is important to whether conduct truly is criminal but finds it awkward, troublesome, or expensive to produce evidence of that fact or circumstance, the state can simply shift to the defendant the burden to prove its nonexistence. By that test, a person found in possession of another's property can be defined as a thief unless he proves that he did not take the property or receive it knowing that it was not his own. A person found trespassing on another's premises can be defined to be a burglar unless he proves that he entered with consent or did not intend to commit a crime. In both examples the facts which are made an "affirmative defense" remain elements of the person's guilt or innocence of theft or burglary at the time of the act; they are shifted only as elements of the legal definition of the crime in order to shift the burden of proof.

This court has taken a different view with respect to removing elements of a defendant's guilt from jury trial. In *State v. Quinn,* 289 Or 727, 618 P2d 412 (1980) we

invalidated a statute that took from the jury a fact necessary to make defendant's act a capital murder and left it to be decided by the judge at sentencing. Only three weeks ago, in *State v. Wedge,* 293 Or 598, 652 P2d 773 (1982), we held that a robbery statute unconstitutionally omitted jury trial of the question whether defendant used a firearm. The requirement of proof beyond a reasonable doubt is a constitutional protection for one accused of a crime as much as trial of the facts by a jury. We are bound to maintain one as much as the other. But on the theory of the present decision, the state could define the crime of robbery so as to make the accused prove that he did not use a firearm rather than make the prosecution prove that he did.

In *State v. Wedge, supra,* the court drew the constitutional line between "the facts which constitute the crime . . . and those which characterize the defendant," acknowledging that the distinction is not always simple. I agree that it is not simple. But even when exculpatory emotional or mental factors are excluded, as in *Patterson,* it is not unmanageable to draw a line short of shifting to a defendant the burden to prove objective events and circumstances external to himself.

It is sometimes argued that affirmative defenses are a desirable device because they offer lawmakers a way to ameliorate harsh general rules when they would be unwilling to do so unless the defendant has to prove the mitigating circumstances.[9] The argument is not persuasive. First, the definition of substantive crimes generally is a matter of legislative choice, but constitutions guarantee the protections of such procedures as trial by jury and the state's burden to prove guilt beyond a reasonable doubt without compelling the testimony of the accused. A legislature faced with the choice between making an element of guilt part of the state's case or eliminating it altogether may or may not make the harsher choice. Perhaps the drafters of the revised criminal code would have kept the old, stringent rule of felony murder without the affirmative defense, perhaps they would have left it to the prosecution to prove at least one of the elements listed in ORS 163.115

---

[9] *See, e.g.,* Judge Breitel's further comments quoted in *Patterson, supra,* 432 US 211 n. 13.

(3)(a)-(e) (1979). Waves of more or less harsh penal policy come and go. The process by which the state applies its penal power to the individual, however, is not left to changing winds of policy. It goes to the essence of the relationship between the government and the individual in our system of law. Second, as acknowledged in *Patterson,* most states place the burden on the prosecution to disprove a defense offered by the accused. 432 US at 207 n. 10 and 211. This does not suggest that the burden is incompatible either with effective or with humane penal laws.

The majority sticks closely to parsing the majority opinion of the United States Supreme Court in *Patterson v. New York.* That Court, of course, only tells us the minimum below which the fourteenth amendment permits no state to fall. Fourteenth amendment due process is not necessarily correct process, but more often than not cases are briefed as if it were. *Patterson* quotes Justice Cardozo's old definition under which the fourteenth amendment denies the states a criminal procedure only if "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." 432 US at 202, quoting *Snyder v. Massachusetts,* 291 US 97, 105, 54 S Ct 330, 78 LEd 674 (1934). The force of that quotation may be judged by the fact that it was followed by listing trial by jury, indictments, the privilege against self-incrimination, and possibly confrontation and cross-examination as dispensable guarantees. 291 US at 105-106. In any event, if a procedure is "so rooted in the traditional conscience of our people as to be ranked as fundamental," the people of Oregon do not need the fourteenth amendment to protect it. I take article I, section 33 of the Oregon Constitution to preserve such "unenumerated" rights as were of constitutional magnitude in 1859, that is to say, rights specifically against government and "so rooted as to be fundamental."[10]

It seems likely that the right not to be convicted of crime except upon proof of guilt beyond a reasonable doubt

---

[10] Or Const, art I, § 33:

"This enumeration of rights, and privileges shall not be construed to impair or deny others retained by the people."

was so recognized.[11] But the question what if any affirmative defenses were recognized at that time has not been briefed, and, as the majority points out, defendant miscites the relevant constitutional clause. This is not the place, therefore, to pursue the difference between the federal and the state premises. In any event, in sustaining the shift of the burden of proof from the prosecution to the defense in this case, the majority is too eager to follow the words of *Patterson* beyond its holding.

The "presumption of innocence" and the prosecution's burden to prove guilt beyond a reasonable doubt rank high among those distinctions that are commonly boasted to place our system of justice above those of supposedly less enlightened nations, including some in which a defendant perhaps may be haled before a court, confronted with some modicum of incriminating evidence, and invited to persuade the tribunal that he has not committed a crime. Under the view adopted by the majority in this case, if carried to its logical conclusion, those boasts can be relegated to Law Day editorials and the popular misconceptions of television crime programs. I therefore dissent.

Lent, C. J. joins in this dissenting opinion.

---

[11] *See, e.g., State v. Glass,* 5 Or 73, 82 (1873) ("The true rule was undoubtedly laid down in the case of *Commonwealth v. Webster* [59 Mass] 5 Cush 296 [1850] . . . . Each fact necessary to the conclusion sought to be established, must be proved by competent evidence, beyond a reasonable doubt"); criminal code of 1864, § 203, Or L 1845-64 (Deady, 1866) at 476.