**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4917-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JEROME FARNVILLE,

     Defendant-Appellant.

_____

         Submitted February 26, 2019 – Decided April 5, 2019

         Before Judges Yannotti and Gilson.

         On appeal from Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 06-08-0789.

         Joseph E. Krakora, Public Defender, attorney for appellant (David A. Gies, Designated Counsel, on the briefs).

         Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Stephen C. Sayer, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from an order dated April 21, 2017, which denied his motions to compel the State to produce an inter-office memorandum prepared by an assistant prosecutor regarding a plea agreement with a co-defendant, and to dismiss his indictment and judgment of conviction (JOC). Defendant also appeals from an order dated May 12, 2017, which denied his motion for a new trial. We affirm.

## I.

On September 12, 2005, Hamilton Blackshear was shot and killed while exiting the back door of the home of his son Albert in Bridgeton. Before the shooting, Albert had been involved in several disputes with Kenneth Bartee about a purported relationship between Albert and Bartee's girlfriend, which resulted in an altercation between them on September 10, 2005. In retaliation, Albert set fire to the house where Bartee was living.

On September 12, 2005, Bartee broke into Albert's house and stole certain items of personal property. Later that night, Hamilton went with Albert to Albert's house to retrieve the remaining property and change the locks. After Hamilton exited a door at the rear of the house, Albert heard "a loud noise [which was] like a bang." Hamilton went back into the house, told Albert he had been shot, and fell to the floor. Hamilton later died from his gunshot wound. Officers

from the Bridgeton Police Department thereafter arrested defendant, Bartee, Andrew Swinton, William Rothmaller, Brian Baldwin, Archie Perry, and Charles Clark in connection with the homicide.

Thereafter, a Cumberland County grand jury returned an indictment charging defendant, Swinton, Bartee, Rothmaller, Baldwin, Perry, and Clark with first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (counts one and two); first-degree armed robbery, N.J.S.A. 2C:15-1(a)(1) and (2) (count three); second-degree robbery, N.J.S.A. 2C:15-1(a)(1) and (2) (count four); second-degree attempted burglary, N.J.S.A. 2C:5-1 and N.J.SA. 2C:18-2 (count five); second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2(a)(1) and 2C:15-1 (count ten); and second-degree conspiracy to commit burglary, N.J.S.A. 2C:5-2(a)(1) and 2C:18-2 (count eleven).

Defendant also was charged with second-degree possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4.1(a) (count six); third-degree unlawful acquisition of a firearm, in violation of N.J.S.A. 2C:39-10 (count seven); and third-degree possession of a prohibited weapon, in violation of N.J.SA. 2C:39-3(b) (count twelve).

On May 9, 2007, Clark pled guilty to conspiracy to commit robbery, in violation of N.J.S.A. 2C:5-2(a)(1) and 2C:15-1, as charged in count ten of the

3

indictment.  The plea agreement stated that Clark would "provide truthful testimony against [his] co-defendants."  In exchange, the State agreed to dismiss Clark's remaining charges and recommend a six-year prison sentence.

At defendant's trial, Clark testified against defendant.  He stated that on September 12, 2005, he and the other co-defendants drove to Albert's home to confront Albert and take some property.  Clark said defendant was armed with what appeared to be a sawed-off shotgun.  He testified that, when the group approached the house, they saw a man exit the back door.  Clark said he witnessed defendant "let off a shot."  He was sure defendant fired the shot because he witnessed the incident first-hand.

The jury found defendant guilty of murder (count one), robbery (counts three and four), unlawful possession of a firearm (count seven), conspiracy to commit robbery (count ten), and conspiracy to commit burglary (count eleven). Defendant was found not guilty of the remaining charges.  At sentencing, the judge merged counts four and ten with count one, and sentenced defendant on count one to sixty years in prison, with fifty-one years of parole ineligibility, pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

The court also sentenced defendant to concurrent terms of eight years, with four years of parole ineligibility, on count eleven, and four years, with two

4

years of parole ineligibility, on count seven. The court filed a JOC dated April 24, 2009. Defendant appealed from the JOC and challenged his convictions and sentence.

Clark later testified against another co-defendant at a second trial. Clark was prepared to testify against a third co-defendant, but that co-defendant pled guilty. On April 15, 2011, the court entered an order vacating Clark's plea agreement. Clark then pled guilty to conspiracy to commit burglary, and the court sentenced him to time-served, which was eighty-five days, and two years of probation.

In February 2012, we reversed defendant's conviction for first-degree robbery (count three), but affirmed his other convictions and sentences. State v. Farnville, No. A-0169-09 (App. Div. Feb. 15, 2012). The Supreme Court denied defendant's petition for certification. State v. Farnville, 212 N.J. 199 (2012).

Defendant thereafter filed a petition for post-conviction relief (PCR), alleging he was denied the effective assistance of counsel. He claimed his trial attorney gave him misinformation and advice, failed to file all appropriate motions, and did not object to certain allegedly prejudicial questions posed by the assistant prosecutor. The PCR court denied the petition. We affirmed the

order denying PCR. <u>State v. Farnville</u>, No. A-3226-13 (App. Div. Nov. 4, 2015). The Supreme Court later denied defendant's petition for certification. <u>State v. Farnville</u>, 224 N.J. 527 (2016).

II.

In August 2016, defendant filed a pro se motion for a new trial. He stated that he had obtained a copy of Clark's JOC, which was entered after his plea agreement was modified. Defendant alleged that at his trial, the assistant prosecutor knowingly used or failed to correct materially misleading testimony by Clark about his plea agreement. He also claimed the assistant prosecutor failed to disclose exculpatory evidence regarding Clark's amended plea agreement before Clark testified against him. The court appointed counsel to represent defendant.

On October 14, 2016, the judge heard oral argument on the motion. Defendant's attorney argued that he believed that Clark and the prosecutor had a "secret" agreement in place when Clark testified at defendant's trial. He asserted that the assistant prosecutor never intended to recommend that the court sentence Clark to a six-year prison term. Counsel acknowledged, however, that defendant had no evidence to support these allegations.

6

The judge instructed the State to locate any memoranda in its case files showing when and why the State decided to vacate Clark's original plea agreement. The judge instructed the State to prepare to produce any such memoranda for in camera review.

On December 9, 2016, the judge heard further argument on the motion. The assistant prosecutor stated that the internal memorandum pertaining to the decision to offer Clark a new plea agreement had been found, but the State objected to its disclosure. The assistant prosecutor offered to provide the judge with a transcript of Clark's sentencing, during which the assistant prosecutor assigned to the case explained the reasons the State had agreed to modify Clark's plea agreement.

The judge ordered the State to provide the internal memorandum for in camera review. The judge stated, however, that if the prosecutor's office objected to in camera review of the memorandum, it could make an ex parte submission to the court explaining the basis for the objection.

On February 21, 2017, the State provided the judge and defendant with a certified statement by John Jesperson, the assistant prosecutor who handled the prosecution of defendant, Clark and other co-defendants. In his certification, Jesperson stated that in the original plea agreement, Clark had agreed to testify

truthfully against his co-defendants. In exchange for that promise, the State had agreed to recommend that the court sentence Clark to a six-year prison term. Jesperson stated that Clark had complied with his obligations under his agreement.

Jesperson also stated that after "the three most culpable armed individuals" were tried, and other co-defendants with less culpability were sentenced to probation, the State re-evaluated the terms of Clark's original plea agreement. Jesperson said the State decided "it was unfair to give the others probation for their lack of culpability and then give [Clark] a six-year sentence when he, too, was less culpable." He said the State believed it was "[i]n the interest of justice and in all fairness to [Clark]" to vacate the original plea agreement and offer a plea that recommended a lesser sentence.

On March 13, 2017, defendant filed another motion with the trial court, seeking an order dismissing his indictment and his JOC. Defendant asserted that the assistant prosecutor acted improperly when he allowed Clark to testify untruthfully about the terms of his plea agreement. Defendant claimed that in doing so, the State had withheld material evidence favorable to his defense, in violation of Brady v. Maryland, 373 U.S. 83 (1963).

On April 6, 2017, the judge heard further argument on defendant's motions. The judge noted that defendant had amended his motion to add a claim that the State improperly failed to disclose Clark's criminal record before he testified at defendant's trial. Defendant claimed the State's failure to disclose this information prejudiced the defense. The judge found that he did not have sufficient evidence to address defendant's new claim. The judge scheduled the matter for another proceeding to allow the State to respond to the new claim.

The judge ruled, however, that at the time of defendant's trial, the State and Clark did not have a secret agreement that Clark would not be sentenced to a six-year term, as provided by the original plea agreement. The judge found that Jesperson's certification made "very clear" that the State decided to vacate Clark's original plea agreement after Clark testified as a witness in defendant's trial.

The judge therefore decided that there was no need for the State to produce its internal memorandum regarding Clark's plea. The judge memorialized his decision in an order dated April 21, 2017, which denied defendant's motions: for a new trial, for release of the State's internal memorandum, and dismissal of the indictment and JOC.

On May 12, 2017, the judge heard further argument by the parties on defendant's motion for a new trial on the ground that the State failed to disclose Clark's criminal record before Clark testified at defendant's trial. The judge reviewed Clark's pre-sentencing report and found that "there is no information [in the report] that would have benefitted the defense in any way or would have provided the defendant with any material information necessary" to prepare his defense or cross-examine Clark.

The judge therefore ruled that the State had no obligation to disclose this information to the defense unless defendant had requested it. The judge filed an order dated May 12, 2017, denying defendant's motion. This appeal followed.

On appeal, defendant raises the following arguments for our consideration:

> POINT ONE
> THE FAILURE TO PRODUCE THE STATE'S 2011 INTERNAL MEMORANDUM REGARDING ITS DECISION TO VACATE A CO-DEFENDANT'S PRIOR PLEA IN ORDER FOR HIM TO RECEIVE A MORE LENIENT SENTENCE AFTER TESTIFYING AT DEFENDANT'S TRIAL PRECLUDED DEFENDANT FROM ESTABLISHING WHETHER THE PROSECUTING ATTORNEY KNOWINGLY USED MISLEADING INFORMATION AT DEFENDANT'S TRIAL WHERE THE CO-DEFENDANT TESTIFIED THAT THE SENTENCE HE WAS TO RECEIVE WAS GREATER THAN THE SENTENCE HE ACTUALLY RECEIVED.

POINT TWO
THE MOTION COURT ABUSED ITS DISCRETION WHERE, IN DENYING DEFENDANT'S NEW TRIAL MOTION WITHOUT CONDUCTING AN EVIDENTIARY HEARING, IT GAVE GREATER WEIGHT TO THE PROSECUTING ATTORNEY'S CERTIFICATION THAN TO DEFENDANT'S REASONING REGARDING WHY A CO-DEFENDANT REMAINED FREE AFTER A PLEA TO A SIX-YEAR TERM IF THE STATE DID NOT INTEND TO OFFER HIM A LESSER TERM [AFTER] TESTIFYING AT DEFENDANT'S TRIAL.

POINT THREE
THE MOTION COURT WRONGLY CONCLUDED THAT THE STATE DID NOT HAVE A DUTY TO DISCLOSE ANY PENDING ARRESTS WITHOUT A SPECIFIC REQUEST FROM DEFENDANT.

POINT FOUR
DEFENDANT'S ATTORNEY ON [THE] NEW TRIAL MOTION WAS CONSTITUTIONALLY INEFFECTIVE WHERE SHE ABANDONED DEFENDANT TO ARGUE ON HIS OWN THE MERITS OF HIS PRO SE FILINGS.

III.

We first consider defendant's argument that the judge erred by refusing to order the State to release its internal memorandum from 2011, which pertained to the State's decision to vacate Clark's original plea agreement and allow him to enter a new plea with a lesser sentence. Defendant asserts that, at the very

11

least, the judge should have ordered the State to provide the memorandum to the court for in camera review. We disagree.

As we have explained, instead of producing the memorandum, the State presented the judge with a certification from Jesperson, the assistant prosecutor who prosecuted defendant, Clark and others charged in the indictment. In his certification, Jesperson explained the reasons why the State decided to vacate Clark's original plea, allow him to enter a new plea, and recommend a lesser sentence.

Defendant failed to present sufficient evidence to support his demand for the production of the State's internal memorandum. Defendant presented no direct evidence that in 2009, when Clark testified against defendant, there was a secret agreement between the State and Clark that he would not be sentenced to a six-year prison term, as provided by the original plea agreement. Defendant relies instead on circumstantial evidence and speculation.

It is undisputed that Clark's original plea was vacated and he was sentenced in 2011, but that is not evidence that a secret agreement between the State and Clark regarding the plea existed in 2009 when Clark testified at defendant's trial. Defendant also notes that after Clark entered his original plea, he did not immediately begin to serve his custodial sentence. This, too, is not

evidence that the State and Clark had agreed before defendant's trial that Clark would not be required to serve the six-year term.

We therefore conclude the judge did not err by refusing to order the State to provide defendant with a copy of the internal memorandum written in 2011, or by refusing to order the State to provide it for in camera review. Jesperson had explained the reason for the State's decision to allow Clark to vacate his original plea and to plead to another charge. Defendant failed to establish a sufficient factual basis to compel the State to provide the 2011 memorandum to defendant, or the court for in camera review.

IV.

Defendant also argues that the judge erred by denying his motion for a new trial. He contends the record does not support the judge's finding that the State did not agree to modify Clark's plea agreement until 2011. Defendant maintains the judge should have conducted an evidentiary hearing on this issue.

A court may grant a defendant "a new trial if required in the interest of justice." R. 3:20-1. Where, as here, the defendant seeks a new trial based on newly discovered evidence, the defendant must show "the evidence is 1) material, and not 'merely' cumulative, impeaching, or contradictory; 2) that the evidence was discovered after completion of the trial and was 'not discoverable

13

by reasonable diligence beforehand'"; and 3) that the evidence 'would probably change the jury's verdict if a new trial were granted.'"  State v. Ways, 180 N.J. 171, 187 (2004) (quoting State v. Carter, 85 N.J. 300, 314 (1981)).

For purposes of applying this test, evidence is considered material if it has "some bearing on the claims being advanced."  Id. at 188 (quoting State v. Henries, 306 N.J. Super. 512, 531 (App. Div. 1997)).  This includes "evidence that supports a defense, such as alibi, third-party guilt, or a general denial of guilt[.]"  Ibid.  Moreover, evidence is considered to be "merely" cumulative, impeaching, or contradictory if it "is not of great significance and would probably not alter the outcome of the verdict."  Id. at 189 (citing Henries, 306 N.J. Super. at 585).

Here, defendant asserted that he was entitled to a new trial based on evidence that purportedly shows the State and Clark had a secret agreement in 2009, when Clark testified at defendant's trial, that Clark would not be required to serve six years in jail, as provided in the original plea agreement.  However, the record supports the judge's finding that there was "absolutely no evidence or reason to believe that there was, in fact, any other deal than the deal under which [Clark] testified at the time of the trial in 2009."

The judge noted that Jesperson's certification and the other documents regarding Clark's plea established that the State decided to modify the plea agreement in 2011, when Clark was scheduled to be sentenced. The judge observed that "it was a modification agreement that was predicated upon how things actually played out" at defendant's trial and the trials of other co-defendants where Clark agreed to testify.

On appeal, defendant argues that the State failed to establish when Jesperson made the decision to modify Clark's plea agreement, and when the other co-defendants were sentenced to probationary terms. As the judge found, however, there is sufficient credible evidence in the record to support the judge's finding that the decision to modify Clark's plea agreement was made after Clark testified at several trials and after the charges against other similarly-situated co-defendants were resolved.

Defendant further argues that the judge erred by relying upon Jesperson's certification. He contends the judge gave greater weight to Jesperson's certification than he did to any other evidence. He asserts that in his certification, Jesperson did not state "[w]hen prosecutorial knowledge existed" that co-defendants similarly situated to Clark should be offered probationary terms. Defendant also asserts that Jesperson failed to explain why Clark

remained free after his plea. Defendant contends the judge should have taken testimony on these issues.

We are not persuaded by these contentions. The record supports the judge's finding that the State made the decision to modify Clark's plea agreement after Clark testified at defendant's trial. Defendant failed to present sufficient evidence to warrant a plenary hearing on that issue.

V.

Defendant also contends that the judge erred by denying his motion for a new trial because the State failed to disclose certain information relating to Clark's criminal history before Clark testified at defendant's trial. Defendant contends the State failed to provide the defense with Clark's "rap sheet," which did not list any convictions for indictable offenses, but mentioned several arrests. Defendant claims the State's failure to disclose this information violated its obligations under Brady. He argues that the court should have conducted an evidentiary hearing on this issue.

We note that defendant has not included the "rap sheet" in the record on appeal. We are convinced, however, that the judge correctly found that defendant's claim regarding the "rap sheet" is entirely without merit. The record shows that at oral argument on the motion, the judge asked defendant directly

whether or not the State had provided Clark's "rap sheet" to the defense. Defendant said he did not know. He just assumed the State had not provided the information because his attorney did not ask Clark about it on cross-examination. Therefore, defendant failed to establish that the State did not provide the defense with Clark's "rap sheet."

The judge noted, however, that although the "rap sheet" showed that Clark had several arrests, generally pending charges could not be used for purposes of impeachment. The judge's statement was consistent with Rule 609(a)(1). The rule allows the use of a witness's conviction of a crime to be used to impeach the witness's credibility, subject to Rule 403, unless excluded by the judge pursuant to subsection (b)(1) of the rule. See N.J.R.E. 609(a)(1).

The judge also noted that Clark's "rap sheet" included a conviction for a disorderly persons offense. The judge correctly found that the conviction for a disorderly persons offense could not be used to impeach Clark. See State v. Rowe, 57 N.J. 293, 302-03 (1970).

Thus, the record supports the judge's determination that defendant failed to establish that the State did not provide the defense with Clark's criminal record. The record also supports the judge's decision that the information on

17

Clark's "rap sheet" could not be used for impeachment. The judge did not err by deciding these issues without a plenary hearing.

VI.

Defendant also claims he was denied the effective assistance of counsel with regard to his motions. He contends that his attorney participated in the oral argument on the request for production of the State's 2011 internal memorandum regarding Clark's plea agreement. He contends, however, that when the judge turned to the merits of the motion for a new trial, his attorney "abandoned" him, leaving him to argue the motion himself.

To establish ineffective assistance of counsel, a defendant in a criminal matter must satisfy the two-part test established in Strickland v. Washington, 466 U.S. 668, 687 (1984), and later adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). A defendant first must "show that counsel's performance was deficient." Strickland, 466 U.S. at 687. The defendant also must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Here, the record does not support defendant's claim that his attorney "abandoned" him at the argument on his motions. Counsel presented argument

18

over the course of four hearings on defendant's motions. During the third proceeding, after counsel presented her argument, the judge gave defendant the opportunity to "present any final arguments you want" before rendering a decision. Defendant presented additional arguments.

On appeal, defendant has not identified any argument that his attorney failed to present, nor has he shown that the outcome of his motions would have been different if his attorney had presented the supplemental arguments instead of defendant. We therefore reject defendant's claim that he was denied the effective assistance of counsel on his motions.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4917-16T4